965 A.2d 887

**Donovan STRICKLAND**

v.

**STATE of Maryland.**

**No. 90, Sept. Term, 2007.**

Court of Appeals of Maryland.

Feb. 20, 2009.

Deborah S. Richardson, Asst. Public Defender (Nancy S. Forster, Public Defender), on brief, for Petitioner.

Steven L. Holcomb, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for Respondent.

Argued before BELL, C.J.,* RAKER, BATTAGLIA, GREENE, MURPHY, JOHN C. ELDRIDGE, (Retired, Specially Assigned), DALE R. CATHELL, (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

The dispositive issue in this criminal case is whether the circuit judge, who presided over the trial and sentenced the defendant, erred, by ruling on a motion for modification of sentence pursuant to Maryland Rule 4–345(e)(1), after the Administrative Judge had assigned the matter to a different circuit judge.[1]

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

1. Maryland Rule 4–345(e)(1) provides as follows:

"(e) **Modification Upon Motion.** (1) Generally. Upon a motion filed within 90 days after imposition of a sentence (A) in the District Court, if an appeal has not been perfected or has been dismissed, and (B) in a circuit court, whether or not an appeal has been filed, the court has

## I.

The petitioner, Donovan Strickland, was charged with first degree murder, robbery with a deadly weapon, and use of a handgun in the commission of a felony. Strickland was tried before a jury in the Circuit Court for Prince George's County, with Judge Richard H. Sothoron, Jr., presiding, from January 5 through January 8, 1998. The jury returned a verdict of guilty on the charges of robbery with a deadly weapon and use of a handgun in commission of a felony, but it failed to reach a verdict on the murder charge. After discussions among defense counsel, the prosecuting attorney and the trial judge, including discussions in the trial judge's chambers on March 2, 1998, which were not recorded, Strickland, pursuant to a plea agreement, entered a plea of guilty to first degree felony murder on March 3, 1998. Although the terms of the plea agreement have been and are currently disputed, the record reflects the following colloquy between the trial judge and Strickland prior to acceptance of the guilty plea on March 3rd:

"The Court: What I indicated to Mr. Blumenthal [defense counsel] is that if you conduct yourself in a well-mannered posture, that is to say, you refrain from getting into any disciplinary problems to speak of while you are incarcerated, the Court would be inclined to favorably consider [a] motion [for modification of sentence] at some point in time in the future.

"And let's suppose, hypothetically, that I imposed a sentence today of life in prison, under felony murder, if that were to happen, then the prior convictions the jury has rendered as to robbery with a deadly weapon would merge into the felony murder. The law does not allow a judge to

---

revisory power over the sentence except that it may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant and it may not increase the sentence."

The five-year limitation upon a court's authority to revise a sentence under Rule 4–345(e)(1) was not in effect when the sentences in this case were imposed and when the motion under the Rule was filed. At those times, there was no time limitation upon a court's authority under Rule 4–345(e)(1) to revise sentences.

impose a sentence for the robbery with a deadly weapon in addition to the life sentence.

"Do you understand that, Mr. Strickland?

"The Defendant: I do.

"The Court: Okay. So that means that if the Court, one, did not impose life without parole, and I indicated to Mr. Manico [the prosecutor] and Mr. Blumenthal that in all likelihood I'm not going to do that today, I would be inclined to impose a life sentence, and I would be inclined to favorably consider a motion for reconsideration of sentence if you do what I just indicated that you should do, and that is to conduct yourself as a model inmate, then the Court would be inclined to grant at a point in time in the future, which is yet to be determined, relief by granting your motion for reconsideration of sentence to the extent that I would reconsider your sentence by suspending a portion of your life sentence down to 50 years."

The trial judge accepted Strickland's guilty plea, sentenced him to life imprisonment for felony murder, imposed no sentence on the robbery conviction because of merger, and sentenced Strickland to a concurrent 20–year term of imprisonment for the handgun offense. Strickland's motion for modification of the sentence, pursuant to Rule 4–345(e)(1), was filed two days later, on March 5, 1998. The trial judge held that motion under advisement for several years.

A hearing on the modification motion was held on October 14, 2005, and November 17, 2005. At the beginning of the recorded portion of the October hearing, the trial judge referred to the judge and the attorneys "hav[ing] just listened at the bench to the court reporter's reciting," based upon the transcript of the March 3, 1998, sentencing, "what the plea agreement was." The trial judge also pointed out that the court reporter's reading of the March 3, 1998, transcript "referenced that I had alluded to a conference in chambers the day before," *i.e.*, on March 2, 1998. In addition, the trial judge indicated that his understanding, when he accepted the

guilty plea, was that he "would be inclined to reconsider, down the road, if Mr. Strickland was a model inmate" but that "I didn't give any promises as to what I would do nor, did I absolutely bind myself."

Defense counsel, who was the same attorney who had represented Strickland at the trial and sentencing, stated that his understanding of the plea bargain, including the position of the trial judge on March 2 and 3, 1998, was different. The defense attorney represented that his

> "understanding of the nature of the agreement was that, if I may use the word, it was written in stone. We would return here at a later point and, if he was a model prisoner, he would get life, suspend all but 50. By model prisoner, I understood that to mean he was to remain significantly infraction-free, no real infraction, Your Honor."

Defense counsel then requested a continuance to search for any record of the proceeding in the trial judge's chambers on March 2, 1998, and to contact the original prosecutor in the case.[2] The trial judge, however, had the court reporter put under oath and testify as a witness. The reporter testified that there existed no recording and no notes of what transpired at the proceeding in chambers on March 2, 1998, although the transcript of the March 3rd sentencing clearly referred to the proceeding in the judge's chambers on March 2nd.

Next, the Assistant State's Attorney representing the State at the October 2005 hearing said that he had spoken with the original prosecutor "this week" and that the original prosecutor had no "strong recollection" of the plea agreement and that his recollection "was unclear." The trial judge also

---

**2.** The original Assistant State's Attorney who had prosecuted the case and had negotiated the plea agreement, Mr. Manico, had since moved to Arkansas. The Assistant State's Attorney at the hearing on the motion for modification was Mr. Maloney. Later, the State's Attorney for Prince George's County, Mr. Ivey, became involved in representing the State.

disclosed that he had talked to the original prosecuting attorney and that

"I suggested to him that his input was important from the State's perspective. That's all I recall talking to him about it. I didn't go into specifics at all."

Defense counsel responded that the testimony or an affidavit from the original prosecuting attorney should be obtained, and that it would be "wise to have alternate counsel who will represent Mr. Strickland, and they may see fit to call me and elicit testimony." Defense counsel then alluded to the trial judge's having previously disclosed to counsel for both sides that the judge had on some prior occasions spoken with the father of the homicide victim in the case, and that the father had, in the judge's words, "taken an active role on various victims' rights issues since this case." In light of the factual dispute over the terms of the plea agreement, the trial judge's ex parte conversation with the original prosecuting attorney, and the trial judge's contacts with the decedent's father, defense counsel made a motion that the trial judge recuse himself and have another judge rule on the motion to modify Strickland's sentence.

The Assistant State's attorney replied that, in his view, there was no reason to elicit the testimony of the original prosecuting attorney because the nature of the plea agreement was set forth in the transcript of the sentencing on March 3, 1998. Regarding the trial judge's conversations with the decedent's father, the Assistant State's Attorney said that "I don't know if you're going to find a judge in the courthouse who does not know [the decedent's father]. He's been quite active in many cases in this courthouse." The prosecuting attorney continued: "[A]s to the recusal, that's pretty much up to the Court. I don't know if the State really has an opinion on that. . . ."

The trial judge denied the motion for recusal, denied the motion to continue the hearing, stated that he was going to consider "[h]ow has Mr. Strickland fared since he's been

detained," and directed that Strickland take the witness stand and be sworn.

Strickland testified that during his incarceration he had been written up by a prison official in a matter involving "[d]isrespect, [and] a verbal disagreement." He also testified that the violation was given a category 4 classification, the least serious class of infractions, and that, after five years, the violation should have been removed from his record. Following Strickland's testimony, the trial judge asked the Assistant State's Attorney about Strickland's eligibility for parole under his current sentence and how the requested sentence modification might affect his parole eligibility. After some discussion among the judge and the attorneys concerning this matter, the trial judge decided that he would continue the hearing until a later date in order for the prosecuting attorney and the defense attorney to check into Strickland's parole status and his disciplinary record.

The hearing was resumed on November 17, 2005. At the beginning of the resumed hearing, the trial judge stated that he had contacted Strickland's classification officer who informed the judge that Strickland had one disciplinary matter on his record, in March 1998,

"for failure to obey a direct order and he had to serve 15 days in lockup. The essence of it was that he used vulgar language. He had been a barber since May of '99, and he had been determined by [the classification officer] and staff members to be trustworthy."

The trial judge said that the classification officer told the judge that Strickland "is under protective custody" because "his welfare was in jeopardy because of cooperation in this case." The trial judge also said that he had discussed with the classification officer Strickland's parole eligibility. In addition, the trial judge disclosed that, "about three weeks ago," the judge spoke with the "Chief Attorney" in the Governor's office about the Governor's policy regarding the parole of inmates serving life sentences. The trial judge indicated that, in the judge's view, Strickland would likely serve more time if

the motion for modification of sentence were granted. The trial judge also reiterated his understanding of the plea agreement, namely that "this matter is in my discretion and I'm not locked into anything."

Defense counsel indicated disagreement with the judge's view that Strickland would be better off if the motion for modification of sentence were denied. Counsel represented that Strickland desired "a hard number on his sentence." Defense counsel went on to emphasize his different understanding of the plea arrangement, stating:

"I do want to clarify something that I said at the last hearing. I indicated at the last hearing that it was my understanding that Your Honor had indicated that if he remained infraction free, Your Honor would suspend the last part of the life sentence. In fact, Your Honor, I misstated that. When Mr. Manico and I and Your Honor had a conversation before the plea was held about what might happen on a reconsideration of sentence, Your Honor indicated that you would reconsider the life [and] suspend all but 50 on a reconsideration. It was at the [March 3, 1998,] hearing, for the first time, when a reference was made to remaining infraction free....

\*　　\*　　\*

"But before the plea, that wasn't part of what we discussed. I think, Your Honor, with all due respect, that Judge Sothoron was very, very clear that on a reconsideration, there would be a life suspend all but 50."

Defense counsel also pointed out that, because of the disagreement concerning the terms of the plea arrangement, he could no longer serve as the defendant's attorney. The following colloquy among defense counsel, the trial judge, and the Assistant State's Attorney, then took place:

"MR. BLUMENTHAL [DEFENSE COUNSEL]: My hope was Mr. Strickland would be able to obtain private counsel. I know there were efforts made in that regard. I know he talked to Mr. Bennett. Unfortunately, he's unable to secure a private attorney. So we request of this Court

now to assign a public defender to represent him, and whatever role they see fit to have me play—

"THE COURT: The request is denied, Mr. Blumenthal.

"MR. BLUMENTHAL: I'm not sure the State even opposes.

"MR. MALONEY [ASSISTANT STATE'S ATTORNEY]: The State agrees that, I think, since he is a witness to this, he ... cannot testify and also be the attorney for Mr. Strickland.

"THE COURT: I don't think there is anything to testify to, Mr. Maloney.

"MR. MALONEY: Well, I think that if both sides agree to it, Your Honor, I think it's in the interest of justice—

"THE COURT: There is no secret deal here. Everything has been placed on the record.

"MR. MALONEY: Well, that's for a determination by fact. We have not had to call any witnesses to that matter, Your Honor. So I think we have to have that hearing.

"THE COURT: I don't think so, Mr. Maloney. The transcript speaks for itself. It is clear that if I was going to consider reconsideration of sentence, it was abundantly clear that Mr. Strickland had to keep himself disciplinary free. It's as simple as that.

"MR. MALONEY: Well, Mr. Strickland's attorney said you promised him in chambers to give him life suspend all but 50 with no qualifications, Your Honor. If he does not get the reconsideration, he has a very valid right to appeal, and he has a right to have that hearing. If you grant it, the State has a reason to assert its objections, because you've made an agreement outside the record to the defendant that he should be getting something. So we have a right to have that hearing. Whether it's from the defense side or from the State's side, that hearing has got to be held, Your Honor.

"THE COURT: I disagree with you.

"MR. MALONEY: Your Honor, if a promise has been made in chambers, and we have a member of the bar saying

that promise has been made, we have to have that hearing to find out. If another judge says it did happen or it didn't happen, so be it. But then we can proceed. But at this point, Your Honor, we have to decide if that occurred."

After further discussion, the trial judge again denied the request for a hearing to determine the nature of the plea arrangement. The judge adhered to the view that the transcript of the sentencing on March 3, 1998, clearly disclosed the nature of the plea arrangement.

The Assistant State's Attorney then pointed out that the trial judge had "become a witness in this case." Consequently, the Assistant State's Attorney requested that the attorneys be given an opportunity to have the Administrative Judge, who was Judge William D. Missouri, decide the matter.[3] The Assistant State's Attorney emphasized that a "hearing must be held" to determine "what happened in chambers [on March 2, 1998], and that's the critical issue at this point, whether or not an agreement was made in chambers between you and the defendant." The Assistant State's Attorney stated that "[y]ou cannot be both the judge and the witness." The trial judge, however, again disagreed with the position of defense counsel and the Assistant State's Attorney.

Immediately thereafter, Mr. Ivey, the State's Attorney for Prince George's County, represented to the trial judge that he had spoken with the Administrative Judge as well as the family of the victim, and that everyone agreed that the hearing on the motion for modification should be postponed and that the matter should be heard by another judge. The State's Attorney informed the trial judge that the Administrative Judge had assigned Circuit Judge Michael P. Whalen to preside over the hearing on the motion to modify the sentence. The trial judge suggested that the attorneys should again

---

3. Throughout 2005 and 2006, as well as currently, Judge Missouri was both the Circuit Administrative Judge for the Seventh Judicial Circuit, which includes Prince George's County, and the County Administrative Judge for Prince George's County.

speak with the Administrative Judge, and the trial judge recessed the proceeding.

Later on November 17, 2005, the proceeding was resumed, and the trial judge acknowledged that the Administrative Judge had granted a continuance and that the entire matter was no longer before the trial judge. It was also pointed out that the Administrative Judge would determine whether the Public Defender's Office should represent Strickland. A hearing on the motion for modification of the sentence was scheduled for February 1, 2006, before Judge Michael P. Whalen.

On December 30, 2005, however, prior to the scheduled hearing before Judge Whalen, the original trial judge (Sothoron, J.) signed and filed the following order:

"NOW, THEREFORE, it is, this 30th day of December 2005, by the Circuit Court for Prince George's County,

"ORDERED, that Defendant's Motion for Reconsideration of Sentence be and the same is hereby DENIED, without the need for any further hearing; and it is further

"DETERMINED, that the Administrative Judge for the Circuit Court for Prince George's County was without authority to continue the reconsideration of sentence hearing on November 17, 2005, said matter being solely within the discretion of the trial judge and any intervention in this case by the Administrative Judge for Prince George's County was inappropriate."

A motion for reconsideration of the above-quoted order was filed and was denied by Judge Sothoron.

Strickland appealed to the Court of Special Appeals, raising several issues. The intermediate appellate court, however, affirmed in an unreported opinion. With regard to the argument that the trial judge erred in denying the motion for modification of sentence after the matter had been assigned to another judge, the Court of Special Appeals stated:

"Judge Sothoron was correct in his conclusion that the motion for reconsideration of sentence was within his sole discretion. *See Duffin v. Warden of Md. Penitentiary,* 235 Md. 685, 686, 202 A.2d 597 (1964) ('[A] motion for reduction

of sentence should be heard or otherwise disposed of by the court which imposed the sentence.')."

Strickland filed in this Court a petition for a writ of certiorari, raising the issues of (1) whether the trial judge erroneously "circumvented the ruling of the Administrative Judge granting" Strickland a hearing before a different circuit judge, (2) whether the trial judge should have recused himself under the circumstances, and (3) whether the trial judge abused his discretion by refusing to grant the motion for modification of the sentence. This Court granted the petition, *Strickland v. State*, 402 Md. 352, 936 A.2d 850 (2007), and we shall reverse on the first issue presented, namely that the trial judge erred by ruling on the motion for modification of sentence after the Administrative Judge had assigned the matter to another judge. Consequently, we shall not reach the second and third issues raised by the petitioner.

## II.

■ The assignment of Maryland judges is provided for in Article IV, § 18, of the Maryland Constitution and in Maryland Rules 16–101 through 16–103, 16–201, and 16–202. Article IV, § 18, of the Constitution, provides, *inter alia*, that the Chief Judge of the Court of Appeals is the administrative head of the State's Judicial system and that the Chief Judge may "assign any judge except a judge of the Orphans' Court to sit temporarily in any court except an Orphans' Court." Article IV, § 18, also requires that the Court of Appeals "shall adopt rules and regulations concerning the practice and procedure in and the administration of ... the other courts of this State...." In addition, the constitutional provision states that the authority of all courts of the State over practice, procedure, and administration "shall be subject to the rules and regulations adopted by the Court of Appeals...."

Maryland Rules 16–101, 16–103, 16–201, and 16–202 were adopted by the Court of Appeals pursuant to the mandate contained in Article IV, § 18, of the Constitution.

██ Rule 16–101 reiterates the broad administrative authority of the Chief Judge of the Court of Appeals, and, with regard to the circuit courts, the Rule confers upon Circuit Administrative Judges and County Administrative Judges extensive supervisory authority. Rule 16–101(a) provides in relevant part as follows:

"**Rule 16–101. Administrative responsibility.**

a. **Chief Judge of the Court of Appeals.** 1. Generally. The Chief Judge of the Court of Appeals has overall responsibility for the administration of the courts of this State. In the execution of that responsibility, the Chief Judge:

\* \* \*

(D) may assign a judge of any court other than an Orphans' Court to sit temporarily in any other court."

\* \* \*

Rule 16–101(c), relating to Circuit Administrative Judges, states in pertinent part:

"c. **Circuit Administrative Judge.** 1. Designation. In each judicial circuit there shall be a Circuit Administrative Judge, who shall be appointed by order and serve at the pleasure of the Chief Judge of the Court of Appeals. In the absence of any such appointment, the Chief Judge of the judicial circuit shall be the Circuit Administrative Judge.

2. Duties. Each Circuit Administrative Judge shall be generally responsible for the administration of the several courts within the judicial circuit, pursuant to these Rules and subject to the direction of the Chief Judge of the Court of Appeals. Each Circuit Administrative Judge shall also be responsible for the supervision of the County Administrative Judges within the judicial circuit and may perform any of the duties of a County Administrative Judge."

\* \* \*

Rule 16–101(d) confers supervisory authority upon County Administrative Judges, providing in relevant part as follows (emphasis added):

"d. **County Administrative Judge.** 1. Designation. After considering the recommendation of the Circuit Administrative Judge, the Chief Judge of the Court of Appeals may appoint a judge of the Circuit Court for any county to be County Administrative Judge of the Circuit Court for that county. A County Administrative Judge shall serve in that capacity at the pleasure of the Chief Judge of the Court of Appeals.

2. Duties. Subject to the supervision of the Circuit Administrative Judge, a County Administrative Judge shall be responsible for the administration of justice and for the administration of the court for that county. The duties shall include:

(i) *supervision of all judges,* officers, and employees of the court, *including the authority to assign judges within the court* pursuant to Rule 16–103 (Assignment of Judges);

(ii) supervision and expeditious disposition of cases filed in the court and the control of the trial calendar and other calendars, *including the authority to assign cases for trial and hearing* pursuant to Rule 16–102 . . . and Rule 16–202 (Assignment of Actions for Trial). . . ."

\* \* \*

The above-quoted provisions of Rule 16–101 make it clear that the assignment of Circuit Judges for trials or hearings is entirely within the province of Circuit and County Administrative Judges, subject only to the supervisory authority of the Chief Judge of the Court of Appeals and the administrative rules adopted by the Court of Appeals.

Rule 16–103, specifically deals with the assignment of judges, and it underscores the authority of Administrative Judges over judicial assignments. The Rule states (emphasis added):

"**Rule 16–103. Assignment of judges.**

a. **Chief Judge of the Court of Appeals.** The Chief Judge of the Court of Appeals may by order assign any judge to sit temporarily in any court other than the one to which he was appointed or elected. The order of assign-

ment shall specify the court in which the judge is to sit and the duration of the assignment. During the period of the assignment, the assigned judge shall possess all the power and authority of a judge of the court to which the judge is assigned.

b. **Circuit Administrative Judge.** Except for assignments made pursuant to section a of this Rule, the Circuit Administrative Judge of each of the judicial circuits *may assign any judge of that judicial circuit to sit as a judge of the Circuit Court* of any county in the judicial circuit, *in any specific case* or cases or for any specified time. The assignments may be made orally or in writing.

c. **County Administrative Judge.** Except for assignments made pursuant to this Rule, *assignment of judges* within the Circuit Court for a county in which there is more than one resident judge shall be made by the County Administrative Judge. The assignment may be made orally or in writing."

\* \* \*

The matter of circuit court judicial assignments is again dealt with in Rules 16–201(c) and 16–202(a). Rule 16–201(c), relating to hearings on motions, states that the County Administrative Judge "shall provide for assignment of hearing dates," and Rule 16–202(a), entitled "Assignment of actions for trial," provides that "[t]he County Administrative Judge in each county shall supervise the assignment of actions for trial. . . ."

 The above-quoted provisions unambiguously vest in the Chief Judge of the Court of Appeals, Circuit Administrative Judges, and County Administrative Judges, full authority to assign judges for trials or hearings in the circuit courts of this State. There is no rule or opinion of this Court which vests in a circuit judge of a particular county the authority to override or ignore an assignment by the Administrative Judge of that County or by the Circuit Administrative Judge of the circuit which includes that county.

Instead of supporting the decisions by Circuit Judge Sotho-ron and the Court of Special Appeals, the case law in this Court is directly to the contrary. In *Whitaker v. Prince George's County*, 307 Md. 368, 514 A.2d 4 (1986), the Circuit Administrative Judge for the Seventh Judicial Circuit assigned certain cases pending in the Circuit Court for Prince George's County to a judge of the Circuit Court for Calvert County. Both Prince George's County and Calvert County were, and are today, in the Seventh Judicial Circuit.[4] The cases involved an injunction against using particular places as bawdyhouses and alleged contempt of court. The defendants at trial challenged the assignment of a Calvert County Circuit Court Judge to hear Prince George's County Circuit Court cases, and on appeal to this Court, the defendants-appellants reiterated their challenge to the propriety of the judicial assignment. In rejecting the argument by the defendants-appellants, this Court relied upon Rule 1202(b), which was the similarly worded predecessor to current Rule 16–103. The Court's *Whitaker* opinion explained as follows (307 Md. at 375–376, 514 A.2d at 8):

"Md. Rule 1202(b)(1) was promulgated by this Court in implementation of the constitutional power vested in it under § 18(a) to make rules governing the administration of the trial courts of the State and expressly grants unto a circuit administrative judge the power of assignment with his *judicial circuit*. '[T]he Circuit Administrative Judge of each of the ... judicial circuits may assign any judge of his *judicial circuit* to sit as a judge of the Circuit Court of any county in the judicial circuit, in any specified case or cases or for any specified time.' (emphasis supplied). Md. Rule 1202(b)(1). As the unambiguous language suggests, the effect of Rule 1202(b)(1) is to provide each circuit administrative judge ..., under the overall aegis of the Chief Judge of the Court of Appeals, broad powers of assignment. Whether it be by the Court of Appeals directly or the circuit administrative judge as its *alter ego* in the circuit, this

---

4. *See* Article IV, § 19, of the Maryland Constitution.

power and authority encompasses all facets of the internal management of our courts."

*See also Baltimore Radio Show v. State,* 193 Md. 300, 316–317, 67 A.2d 497, 505 (1949).

■ *Duffin v. Warden of Md. Penitentiary,* 235 Md. 685, 686, 202 A.2d 597, 597–598 (1964), relied on by both the State and the Court of Special Appeals, does not support the Court of Special Appeals' decision. The language from *Duffin* which is relied upon, *i.e.,* that "a motion for reduction of sentence should be heard or otherwise disposed of by the court which imposed sentence" (emphasis added), refers to the sentencing court and not the sentencing *judge.* More importantly, *Duffin* did not involve an administrative order assigning the matter to a judge other than the sentencing judge. *Duffin* also did not involve any issue under the Maryland Rules relating to the assignment of cases.

■ As stated in the *Whitaker* opinion, 307 Md. at 376, 514 A.2d at 8, the authority of the Administrative Judge "encompasses all facets of the internal management of our courts." Consequently, Judge Sothoron clearly erred in overruling the assignment by the Administrative Judge.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE ORDERS BY JUDGE SOTHORON ON DECEMBER 30, 2005, AND THEREAFTER, AND TO REMAND CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

MURPHY, J., Concurs.

Concurring Opinion by MURPHY, J.

I agree that, under the unique circumstances of the case at bar, the petitioner is entitled to a hearing on his motion for

modification of sentence and that the hearing must be held by a judge other than the judge who originally imposed the sentence. I also agree that *Duffin* does not compel a contrary conclusion. I do not agree, however, that *Whitaker v. Prince George's County* supports the proposition that current Rule 16–103 vests an Administrative Judge with the discretionary authority to direct that a Rule 4–345(e) motion be *reassigned* to a judge other than the judge who imposed the original sentence.[1] I am persuaded that the reassignment of a Rule 4–345(e) motion requires either (1) the consent of the sentencing judge,[2] or (2) a factual finding that the sentencing judge has become disabled or must be recused.

## I

Maryland Rule 4–361 details the procedure to be followed when it is necessary for another judge to substitute for a judge whose absence is due to "termination of office, ... or other disability." In the case at bar, both the prosecutor and petitioner's counsel (1) agreed that the judge who imposed sentence would be a necessary witness at the motion for modification hearing, and (2) received the sentencing judge's permission to present their concerns to the Administrative Judge. While with the benefit of hindsight, it is clear that the Administrative Judge should have held an on-the-record hear-

---

1. As noted by this Court in *Johnson v. State*, 274 *Md.* 29, 333 *A.2d* 37 (1975), the "Reduction of Sentence" provisions in the Maryland Rules are "virtually identical" to the provisions then contained in Rule 35 of the Federal Rules of Criminal Procedure. *Id.* at 39, 333 *A.2d* at 42. "Federal case law clearly indicates that, under Rule 35, motions to correct or reduce a sentence are to be heard by the court that rendered the original judgment and sentence. *See* Wright, Federal Practice & Procedure: Criminal (Second) § 582 (1982)." *State v. Beam*, 115 Idaho 208, 766 P.2d 678, 684 n. 3 (1988).

2. Under Rule 4–347(e)(1), "[w]ith the consent of the parties and the sentencing judge, the hearing [on a petition for revocation of a defendant's probation] may be held before any other judge." This provision would not be necessary if Rule 16–103 authorizes an Administrative Judge to order that a violation of probation hearing be held before a judge other than the sentencing judge, even if the sentencing judge does not consent to the reassignment.

ing before ordering that the motion be reassigned to another judge, it is equally clear that the Administrative Judge—as a practical matter—granted a joint motion for recusal following a conference with counsel. This ruling was based upon (1) the non-clearly erroneous finding of (stipulated) fact that the sentencing judge would be an essential witness at the modification hearing, and (2) the correct conclusion of law that, under both Maryland Rule 5–605 and Canon 3D(1)(a) of Maryland Rule 16–813,[3] the sentencing judge could not be both witness and decision maker.

The record also shows that the sentencing judge initially acquiesced in the decision of the Administrative Judge. Under these circumstances, the sentencing judge did not have the authority to "reassign" the case to himself in order to enter the December 30, 2005 Order.

## II

As to the further proceedings in the Circuit Court, the record shows that, in petitioner's MOTION FOR RULING ON MOTION FOR RECONSIDERATION OF SENTENCE, it is expressly asserted that petitioner's guilty plea was "based on previous discussions that contemplated a specific sentence upon reconsideration[,]" and that "specifically, [the sentencing judge] agreed that [petitioner's] sentence would be modified to a sentence of life suspend all but fifty years, pursuant to discussions between the [petitioner], the State and the Court." The record also shows that on March 3, 1998, the following transpired at a bench conference:

> THE COURT: As [petitioner's counsel] no doubt has told you, Mr. Strickland, whenever one pleads guilty to felony murder, as I just indicated, it is a first degree charge, and therefore, it carries a life sentence, and judges such as myself cannot give you a numerical number in terms of a

---

3. This Canon requires that a judge "recuse himself or herself from a proceeding in which ... the judge has ... extra-judicial knowledge of a disputed evidentiary fact concerning the proceeding[.]"

sentence. What I mean by that is we can suspend a portion of the time, but the life sentence still remains in effect.

\* \* \*

THE COURT: Now, I did tell [petitioner's counsel] yesterday, in [the prosecutor's] presence, that assuming [petitioner's counsel] is going to be filing, as he indicated to me yesterday, after sentencing today, assuming your plea is accepted, assuming we go forward with sentencing today, which is my intent, if that procedure follows, [petitioner's counsel] will be filing on your behalf what we call a motion for reconsideration of sentence, which has to be filed within 90 days of sentence.

It doesn't mean that the judge will act on that motion within that 90–day window, but to safeguard your rights, that motion must be filed within 90 days.

Do you understand, Mr. Strickland?

[THE PETITIONER]: Yes, sir.

THE COURT: What I indicated to [petitioner's counsel] is that if you conduct yourself in a well-mannered posture, that is to say, you refrain from getting into any disciplinary problems to speak of while you are incarcerated, the Court would be inclined to favorably consider that motion at some point in time in the future.

And, let's suppose, hypothetically, that I imposed a sentence today of life in prison, under felony murder, if that were to happen, then the prior convictions the jury has rendered as to robbery with a deadly weapon would merge into the felony murder. . . .

So that means if the Court, one, did not impose life without parole, and I indicated to [the prosecutor] and [petitioner's counsel] that in all likelihood I'm not going to do that today, I would be inclined to impose a life sentence, and I would be inclined to favorably consider a motion for reconsideration of sentence if you do what I just indicated that you should do, and that is to conduct yourself as a model inmate, then the Court would be inclined to grant at a point in time in the future, which is yet to be determined, relief by granting

your motion for reconsideration of sentence to the extent that I would reconsider your sentence by suspending a portion of your life sentence down to 50 years. . . .

[T]he sentencing of yourself at this point will be up to myself in this case. Do you understand that, Mr. Strickland?

[THE PETITIONER]: Yes, sir.

THE COURT: . . . [I] have sent a message to you clearly up here at the bench that I'm not inclined at all to impose a life without parole sentence in this case. My theory here, as I told [the prosecutor] and [petitioner's counsel] yesterday, is that if somebody pleads guilty to the lead count, in this case felony murder, then they should be entitled to some consideration for doing that. Do you understand that?

[THE PETITIONER]: Yes, sir.

THE COURT: But at the same token, what I am obviously doing is putting the onus, the responsibility, on your shoulders to demonstrate through your actions after sentencing that you are deserving of reconsideration of sentence.

The following transpired after the petitioner and counsel returned to the trial tables:

THE COURT: [M]r. Strickland . . . it's my understanding . . . that there really isn't any plea bargaining between [the prosecutor], representing the State, and [petitioner's counsel], representing you, wherein they have agreed to set sentence or to drop certain charges because that's not being done here.

It's my understanding that the State is going to make a recommendation. That recommendation may run the gamut of life without parole to life or whatever, but [the prosecutor] is free to tell the Court what he thinks the appropriate sentence is going to be.

[Petitioner's counsel] is free to tell me what he thinks the appropriate sentence would be.

As I told you at the bench a few moments ago, whenever one pleads guilty to first degree felony murder ... it carries a life sentence. You understand that, Mr. Strickland?

[THE PETITIONER]: Yes, I do.

THE COURT: And to that extent, the Court is bound to impose a life sentence.

Now, the Court can suspend a portion of that life sentence. Do you understand that?

[THE PETITIONER]: I do, sir.

THE COURT: And as I did indicate to you, and this is based upon conversations I had off the record with [petitioner's counsel] and [the prosecutor] yesterday when he entered my chambers, that [petitioner's counsel] made it clear to me that if the court accepts your plea of guilty today and proceeds to sentencing, and the life sentence is imposed, whether it's mandatory, whether it's a straight life, whatever it may be, [petitioner's counsel] is going to request the Court reconsider your sentence in the future.

\* \* \*

Myself being the sentencing judge ... I would be the one to decide whether or not to grant that motion for reconsideration of sentence. Do you understand that?

[THE PETITIONER]: Yes, I do.

THE COURT: I cannot increase your sentence. I could decrease your sentence or keep your sentence as is. In other words, unchanged. Do you understand that?

[THE PETITIONER]: Yes.

THE COURT: So the record is clear, I told you that if, indeed, I reconsider your case or your sentence, Mr. Strickland, the reason for doing so would be depending upon your conduct while you are incarcerated. Do you understand that?

[THE PETITIONER]: Yes, I do.

THE COURT: And the Court could reconsider your sentence to any extent, that is to say, hypothetically, if I

wanted to go ahead and suspend all but 50 years, I could do that. Do you understand that?

[THE PETITIONER]: Yes, I do.

The following transpired immediately before the prosecutor recited the statement of facts that constituted the basis for the plea:

THE COURT: With that said, is that the full understanding of what you had between what the State is going to recommend, what [petitioner's trial counsel] may recommend on your behalf, and what the Court may do in the future?

[PETITIONER]: Yes, it is.

THE COURT: Nobody has promised you any additional promises, offers of reward, any kind of inducements or any type of statements to you, other than what I stated for the record to get you to plead guilty?

[PETITIONER]: No, they haven't.

On the basis of the above quoted colloquy, it is difficult to hypothesize that the sentencing judge agreed that he would ultimately modify petitioner's sentence even if petitioner attempted to murder a corrections' officer and/or attempted to escape. It is clear, however, that the sentencing judge (1) did have an "off the record" conversation with the prosecutor and the petitioner's counsel, and (2) did not request that either the prosecutor or petitioner's counsel make an "on the record" statement as to what "disciplinary problems" would result in the forfeiture of petitioner's entitlement to a modification. Under these circumstances, I would expressly require that the following determinations be made on remand.

The Circuit Court must first determine whether it is persuaded by a preponderance of the evidence that petitioner's plea was based upon an agreement that the sentence would actually be imposed in two stages, with the modification being imposed *regardless* of petitioner's institutional record. If petitioner can successfully shoulder the burden of persuasion on that issue, the petitioner is entitled to enforcement of the actual agreement.

If it is not persuaded that the parties agreed to a downstream modification regardless of petitioner's institutional record, the Circuit Court must determine whether it is persuaded by a preponderance of the evidence that petitioner has substantially complied with the on-the-record statement of conditions imposed by the sentencing judge on March 3, 1998. If petitioner can successfully shoulder the burden of persuasion on that issue, the petitioner is entitled to the requested modification.

If it is not persuaded that petitioner has substantially complied with the conditions imposed by the sentencing judge, the Circuit Court shall exercise its discretion in deciding the issue of whether and/or the extent to which petitioner's motion for modification should be granted.