# ROBERT COLLOM RAND *v.* FLORENCE MITCHELL RAND

[No. 170, September Term, 1978.]

*Decided November 3, 1978.*

The cause was argued before MOYLAN, LOWE and WILNER, JJ.

Robert C. Rand, in proper person, appellant.

Elbert R. Shore, Jr., with whom were *John T. Bell, Frank S. Cornelius, Alfred L. Rehder, Richard S. Ulf* and *Bell, Cornelius & Shore* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

An announcer for a soap opera would bill this proceeding as yet another episode in the continuing saga of the Rand family — the eternal, endless quest by Florence Rand to

maximize the contribution of her former husband Robert toward the support of their daughter Virginia, and the equally determined effort by Robert to pay as little as he must. Unfortunately, this is not a soap opera. Real people are involved; and, for the fourth time in less than seven years an appellate court of this State is called upon to resolve the post-marital financial disputes between these warring parties. Would only that Virginia have had the benefit of the fortune invested in this seemingly interminable litigation.

The parties were married in 1942 and divorced in 1971. We first saw them on appeal from those provisions of the divorce decree dealing with alimony and child support; and, in *Rand v. Rand,* 13 Md. App. 574 (1971), we affirmed that part of the decree requiring Robert to pay $75 a month alimony and, although the issue was not specifically addressed in that appeal, we also left standing the part of the decree requiring Robert to contribute $250 a month for the support of the minor child, Virginia, then 13 years of age.

Some four years later, Florence petitioned for an increase in child support in order, she claimed, to help finance the expenses of Virginia's college education. Robert responded with a petition to reduce or terminate Florence's alimony. Adopting the recommendations of its Domestic Relations Master, the Circuit Court for Montgomery County increased Robert's obligation for child support from $250 to $480 per month, but terminated his alimony payments. Florence appealed, and, in *Rand v. Rand,* 33 Md. App. 527 (1976), we reversed. Without disturbing the chancellor's finding that $520 per month was required for Virginia's support, this Court concluded that Robert's obligation should be 5/8 of that amount, or $325 a month, and that Florence should be responsible for the other 3/8, or $195 per month. We reached that conclusion by accepting the finding that Robert's net income, after deducting his personal expenses, was $500 per month and that Florence's net income, after deducting her personal expenses, was $300 per month. Thus, we opined, Robert, whose net income amounted to 5/8 of the combined net income, should pay but that same proportion of Virginia's documented expenses, and Florence likewise, on the same basis, should pay the other 3/8.

Unhappy with the result, if not the approach, Florence successfully petitioned for a writ of certiorari from the Court of Appeals. The net effect, and holding, of that Court is best summarized by this excerpt from its Opinion, appearing at 280 Md. 508, 517:

> "We, therefore, fully agree with the Court of Special Appeals that the parents must share the responsibility for parental support in accordance with their respective financial resources. In so holding, we do not undertake to mandate any specific formula by which the chancellor is to calculate the amount of support to be charged against each parent. Whether it is appropriate to utilize a 'net income after personal expenses' test, as the Court of Special Appeals did in this case, or a gross income, or a total capital resources test, or some other measure of assessing financial resources, is a matter to be determined by the chancellor in view of the circumstances of each individual case. While we do not disagree with the allocation made by the Court of Special Appeals in this case, we nevertheless shall remand the matter so that the chancellor, having the benefit of the principles of law enunciated in this opinion, may in the first instance determine, in the exercise of his discretion, the parental support obligation of each parent."

The issue involved in this proceeding results from the time lag between the order of the circuit court requiring Robert to pay $480 per month and the mandate of this Court in the second *Rand* case (that reported in 33 Md. App. 527) ordering a reduction to $325. Robert had, of course, been paying the $480 since the initial decree; and, by the time the circuit court revised its decree in December, 1976, upon the remand from this Court, he had paid the $480 for 16 months.[1] Robert asked,

---

1. The order increasing the support to $480 per month was made retroactive to September 1, 1975. Why this date was chosen is not clear. Florence's petition for an increase had been filed August 7, 1975; the chancellor's order was issued December 9, 1975. The chancellor's order reducing Robert's share of Virginia's support to $325 per month became effective January 1, 1977. The 16-month interval was from September 1, 1975, through December, 1976.

at the December hearing, for a recoupment of this overpayment, which he estimated to be $2,480 (16 times the difference between $480 and $325); but a resolution of this request was deferred pending a decision by the Court of Appeals following its grant of certiorari. The ultimate decision of the Court of Appeals required a further proceeding in the circuit court, in which the chancellor was to determine for himself what the appropriate breakdown should be, rather than revising the decree solely by reference to the "formula" approach ordered by this Court. This further hearing was held on October 4, 1977, at which time the chancellor continued the obligation at $325. Once again, Robert sought a recoupment of the $2,480 overpayment, but the chancellor ordered Florence to repay only 3/8 of that amount, or $930. It is from that determination — the refusal of the court to order the return of the entire $2,480 — that Robert appeals. We are somewhat fortunate in that Florence has not filed a cross-appeal.

Robert asserts that there are "two compelling arguments for reversal." First, he says, since the initial order of $480 per month was made retroactive to September 1, 1975, the revision to $325 should also be made retroactive to the same date; second, since the "overpayment", as he calls it, was "a direct result of false sworn testimony" by Florence, she should gain no advantage. Neither of these contentions has any merit and the judgment will therefore be affirmed.

It does not appear that the appellate courts of Maryland have yet addressed the question posed here directly. We find persuasive, however, and therefore adopt, the view expressed on several occasions by the New York courts that a party making child support payments pursuant to a court order has no *right* to restitution or recoupment following a reversal or modification of the award on appeal. The rationale for this rule is that the right to support arises out of the policy of the law and not by contract. *See Grossman v. Ostrow,* 308 N.Y.S.2d 280 (1970); *Glassman v. Glassman,* 245 N.Y.S.2d 298 (1963). *Also, Coleman v. Coleman,* 402 N.Y.S.2d 6 (1978); 27B C.J.S. *Divorce,* § 324 (16), 1978 Cum. Supp.[2]

---

2. The *Coleman* Opinion suggests that the recovery of child support overpayments may not be proper under any circumstance — that it "has not been sanctioned." We do not adopt that view, as discussed *infra.*

The obligation of a parent to support his (or her) minor child is required by public policy and is expressly imposed by statute. Md. Annot. Code, art. 72A, § 1. The determination of the amount of support to be paid by a parent, and the fixing of such amount as part of an order of a court having proper jurisdiction, authorized by Md. Annot. Code, art. 16, § 66 (a), is an implementation of that public policy, and therefore rests upon a different footing than ordinary judgments representing the adjudication of private claims. Some evidence of this difference is provided in Article III, § 38 of the Maryland Constitution, exempting a valid decree of a court of competent jurisdiction for the support of dependent children from the general prohibition against imprisonment for debt. *See McCabe v. McCabe,* 210 Md. 308 (1956); *Speckler v. Speckler,* 256 Md. 635 (1970). *Also, Zouck v. Zouck,* 204 Md. 285, 300 (1954).

The fixing of child support derives from the obligation of the parent to the child, not from one parent to another. It presumably represents the considered judgment of the court as to what the needs of the child are and what the parent subject to the order ought, and can afford, to pay. This, in turn, is necessarily premised upon the assumption that the amounts paid, or to be paid, under the order are not excessive, and will, in fact, be applied exclusively to the ascertained needs of the child, whether directly or indirectly, and not to any extraneous purposes.

At least in the situation where the court entering such an order had jurisdiction to do so, and the order is therefore not void *ab initio,* recognition of a *right* of total recoupment because an appellate court disagrees as to the *amount* of support ordered, and directs the lower court to revise its decree by reducing the support allowance, would run the substantial risk of thwarting the clearly expressed public policy.

Where is the recoupment to come from? If the direct recipient — the custodial parent, usually — has not, in fact, expended the "overpayment" for the support of the child and has it, or its equivalent (in whole or in part), available for repayment, it is only fair and just that the paying parent be

able to recover it. Thus, the power of a court to order or permit recoupment should not be denied. But to the extent that such overpayments have been properly expended for the child's support in reliance on the court order, *and* neither they nor their equivalent are available for repayment, the *entitlement* to recoupment would, of necessity, entail a reduction in the amount of future support below even that which the appellate court itself, or the trial court in the implementation of the appellate court's mandate, has found necessary. In other words, in such a situation, the onus of the remedy would fall upon the child, not the receiving parent. The existence of a *right* of recoupment, in that instance, would be entirely inconsistent with the obligation imposed upon the parent by law, because it would require that, during the recoupment period — the interval of time during which the paying parent reduces the periodic payment below the amount last ordered — the child would be receiving less than that found necessary for his or her support; and thus, the recouping parent would not be fulfilling his or her statutory obligation.

Whether, and to what extent, the receiving parent in fact used the "overpayment" for the support of the child and has the funds from which to permit a proper recoupment without depriving the child, is a determination that must necessarily be made by the trial court, exercising its discretion upon the relevant evidence before it. The scope of discretion, and the principles applicable to its exercise, with respect to allowing recoupment must be substantially the same as pertain to the fixing of child support in the first instance; and thus, the determination of the court will not be disturbed on appeal unless it is found to be clearly erroneous.

The record here shows that the trial court determined the extent of Robert's allowable recoupment solely upon the basis of the 5/8:3/8 formula. Having found that the entire amount of the $2,480 "overpayment" was expended by Florence for the benefit of Virginia, it decided to "divide the overpayment according to the formula and require Mrs. Rand to pay back the sum of $930.00, which is three-eighths [of $2,480]." Although the Court of Appeals said in its *Rand* decision (280

Md. 508, at 517), that such a formulated approach was an inappropriate basis for an appellate court to adopt in the first instance, it is not necessarily inappropriate for the chancellor, in the exercise of his discretion, to use this method.

The Court, having (1) determined, upon the basis of Virginia's needs and the respective resources and abilities to pay of Florence and Robert, that Robert should contribute $325 per month to Virginia's support, and (2) concluded that the entire $2,480 was expended in good faith and in reliance upon the previous order for Virginia's support, and there being sufficient evidence in the record to support both of those findings, it would not have been an abuse of discretion for the court to deny *any* recoupment to Robert. That it allowed a recoupment of $930, albeit on a formula basis, does not constitute an abuse of discretion, and is not, therefore, a judgment about which Robert has a legitimate complaint.

*Judgment affirmed; appellant to pay the costs.*