81 A.3d 639

**Gary HEIT**

v.

**Kathryn STANSBURY.**

**No. 2494, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Dec. 20, 2013.

Reconsideration Denied Feb. 26, 2014.

Eric H. Singer, Bethesda, MD, for Appellant.

Jo Benson Fogel (Gloria F. Irons, on the brief), Rockville, MD, for Appellee.

Panel: GRAEFF, KEHOE, and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

GRAEFF, J.

Gary Heit, appellant, and Kathryn Stansbury, appellee, were married on August 1, 2005. On December 24, 2008, the Circuit Court for Montgomery County issued a Judgment of Absolute Divorce. Since that time, the parties have remained embroiled in litigation, including previous appeals to this Court, *Heit v. Stansbury*, Nos. 9 & 990, Sept. Term, 2009 (filed Jan. 15, 2010) and *Heit v. Stansbury*, No. 354, Sept. Term, 2010 (filed June 10, 2011). In the latter appeal, this Court reversed the $82,340 monetary award in favor of Ms. Stansbury, as well as a money judgment in the amount of $15,000, and we vacated the June 11, 2009, Qualified Domestic Relations Order ("QDRO") and the judgment awarding Ms. Stansbury attorneys' fees of $76,571.53.

On remand, the circuit court denied Ms. Stansbury's request for a monetary award and attorneys' fees, and it denied "all other requests for relief by either party." Mr. Heit then filed a post-judgment motion for restitution, seeking the return of monies already received by Ms. Stansbury from his 401(k) plan and from wage garnishments. He also moved to have the case specially assigned to the circuit court judge who conducted the remand hearing. The court denied Mr. Heit's motion for special assignment, and after a hearing before a different judge, the court granted Ms. Stansbury's motion to dismiss on the ground that *res judicata* barred Mr. Heit's claim.

On appeal, Mr. Heit raises two questions for our review, which we have rephrased:

1. Did the circuit court err in granting Ms. Stansbury's motion to dismiss Mr. Heit's motion for restitution on *res judicata* grounds?

2. Did the Administrative Judge abuse his discretion by failing to specially assign the case?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The background facts concerning the parties' marriage and the proceedings leading up to the first two appeals were set forth in detail in our prior opinions and need not be repeated. We shall set forth only the facts and proceedings relevant to the issues raised on this appeal and for purposes of context.

In the first Judgment of Absolute Divorce, dated December 24, 2008, the court awarded a monetary award to Ms. Stansbury in the amount of $173,911.53, including $76,900 for repayment of a joint home equity line of credit ("HELOC"), $15,000 for unpaid spousal support, $5,440 for a Cadillac Escalade, and $76,571.53 for attorneys' fees. The court also ordered a transfer of 50% of the total value of Mr. Heit's Oracle 401(k) plan as of the date of divorce. The court found that the total value of the 401(k) was $132,741; thus, Ms. Stansbury was entitled to $66,370.50.

Mr. Heit did not file a supersedeas bond, and on January 6, 2009, Ms. Stansbury sought a writ of wage garnishment against Oracle, Mr. Heit's employer, in the amount of $173,911.53. On February 26, 2009, she moved for entry of the QDRO to obtain her 50% interest in Mr. Heit's 401(k). Mr. Heit opposed Ms. Stansbury's motion for entry of a QDRO, arguing that the court had erred in classifying the entire value of the Oracle 401(k) plan as marital property. The court denied the motion on June 9, 2009. Mr. Heit appealed this ruling, as well as the Judgment of Absolute Divorce, contending that the court erred: (1) in granting Ms.

Stansbury a divorce on cruelty grounds; and (2) in entering the money judgment in Ms. Stansbury's favor.

We consolidated Mr. Heit's appeals and reversed the Judgment of Absolute Divorce, agreeing that the court erred in granting the divorce on the ground of cruelty. We further opined that, in the absence of the divorce itself, it was premature to make any decision with respect to a marital award. Thus, we remanded the case to the circuit court for "possible further proceedings."

On March 31, 2010, the circuit court held a remand hearing. On April 16, 2010, the court entered a "Judgment of Absolute Divorce *Nunc Pro Tunc,*" the second divorce judgment, granting a divorce on the ground of voluntary separation. In addition, the court awarded attorneys' fees to Ms. Stansbury in the amount of $76,571.53, granted Ms. Stansbury a monetary award of $82,340, ordered that Ms. Stansbury was entitled to 50% of Mr. Heit's Oracle 401(k) plan, which was valued at $132,741 as of December 24, 2008, and ordered that Mr. Heit pay Ms. Stansbury $15,000 in accordance with the prior agreement of the parties.

On April 19, 2010, Mr. Heit noted his appeal. On May 26, 2010, Fidelity Investments issued Ms. Stansbury a check in the amount of $88,217.32.

On June 10, 2011, we issued our opinion with respect to the second divorce judgment. We vacated the QDRO, holding that the court erred in classifying the entire value of the 401(k) as marital property. We reversed the monetary award in the amount of $82,340 on several grounds, including that the court did not have jurisdiction to use a monetary award as a judgment on a tort and contract claim. We also reversed the $15,000 judgment in favor of Ms. Stansbury, holding that the court did not have authority to enter judgment for arrearages for non-payment of monies pursuant to an agreement that was not for alimony or support. Because we reversed the "monetary award," we also vacated the $76,571.53 award of attorneys' fees, for re-evaluation.

On June 4 and 5, 2012, the circuit court held a hearing. The court clarified the issues before it on remand: (1) what portion of the Oracle 401(k) constituted marital property; (2) the value of the marital portion of the Oracle 401(k) as of December 24, 2008, the date of divorce; (3) what, if any, of the marital portion of the Oracle 401(k) should be the subject of an equitable monetary award to Ms. Stansbury; and (4) attorneys' fees.

Counsel for Mr. Heit informed the court that the 401(k) had been depleted and no longer existed. He advised that the parties had reached a stipulation, for purposes of recalculation of a monetary award, that the marital portion of the 401(k) was $58,382.34, and the non-marital portion was $93,297.06. He argued, however, that no monetary award should be granted because Ms. Stansbury had already received $88,217.32 as a result of the "erroneous QDRO," and she "succeeded in garnishing approximately $24,000" from his wages prior to the reversal of the money judgments. The following colloquy then ensued:

[COUNSEL FOR MR. HEIT]: So . . . the facts show that Ms. Stansbury despite the reversal or vacator on every issue in these divorce proceedings and despite the two appeals on which she's lost, has amassed some $112,000 from Mr. Heit's wages and the 401K earnings. That's money she's already received. And awarding a monetary award from the hypothetical of $58,000 of marital property that was in the 401K as of December 2008, we maintain . . . that would not seem equitable in light of that windfall already obtained.

THE COURT: Well, are you entitled to get that back or is that just sort of gone forever?

[COUNSEL FOR MR. HEIT]: Do you want to issue an order to disgorge, I don't think you can.

THE COURT: I'm just asking you what—

[COUNSEL FOR MR. HEIT]: We would like to get some of that back, of course.

THE COURT: Well, I'm sure you would like to, I'm just asking you what's the vehicle for getting it back if you can get it back or is it just too late to get back?

\* \* \*

THE COURT: ... I'm just asking you as a legal matter, that's all, just curious.

[COUNSEL FOR MR. HEIT]: Well, you know once upon a time, you don't see this very often, but once upon a time in the late 1800's, and it hasn't been overturned, there's such a thing as called the cause of action for reimbursement. That's what happens when you win on appeal but you can't post a supercedes [sic] bond so you're never protected and you lose your money. And you sue to get it back if you're successful. So that's the deal. Does that make any sense to you?

THE COURT: Sure.

\* \* \*

I'm just asking if there is any legal authority or what the bottom line is. But as of now—

[COUNSEL FOR MR. HEIT]: You realize that can't take place, right now, right, because that's dependent on what happens here.

THE COURT: Right, right.

[COUNSEL FOR MR. HEIT]: Right, okay. But let's suppose the [c]ourt closed its eyes to that kind of elephant in the room about the $112,000 being in her possession, the facts still show that awarding even a [de] minimus percentage of this $58,000 is extremely difficult to justify.

Ms. Stansbury's counsel explained that Mr. Heit had not posted a supersedeas bond, and therefore, Ms. Stansbury properly proceeded to collect on the judgments. Ms. Stansbury testified that she had been issued a check from Fidelity Investments in the amount of $88,217.32, dated May 26, 2010.[1]

---

1. Ms. Stansbury testified that, as of December 24, 2008, her 50% share of the 401(k) was $66,370.50. The transfer, however, was made in

Counsel for Mr. Heit introduced into evidence copies of checks that had been received by Ms. Stansbury from 2009 through 2011 as a result of the wage garnishment. The total amount was $24,597.31. Ms. Stansbury stated that she had used the money she received from the garnishments to pay "a lot of bills that were Mr. Heit's bills that [she] was still paying on," such as credit card debt in the amount of $100,000. Other than the garnishment payments, Ms. Stansbury received no money from Mr. Heit for any joint obligations.

Mr. Heit's counsel argued that the court's initial determination that Ms. Stansbury receive 50% of the marital property "can't stand" on remand. Noting that the marital property was worth $58,000, he asserted that "Ms. Stansbury has already mistakenly received 88,000 plus another 24,000," a total of $112,000 "that should never have been transferred over to her." With respect to the possibility of the court ordering a monetary judgment in Ms. Stansbury's favor, counsel stated:

I don't understand how that could possibly be equitable in any way. She's already received this windfall and that's why even awarding 10 percent of that $58,000 makes no sense to me when she's already received 112 and that's in the record.

In response to the court's question, counsel confirmed that his "basic bottom line argument is that there should be a zero award of the marital property and a zero award of attorney's fees" based on "what's happened since" the initial ruling.

Counsel for Ms. Stansbury acknowledged that Ms. Stansbury had received $112,000. She argued, however, that there were big inequities in the case, including the HELOC and undisputed monies distributed for Mr. Heit's benefit that he was not repaying. She asserted that the balance of the HELOC was approximately $246,000. In rebuttal, counsel for Mr. Heit reiterated his argument that Ms. Stansbury already

---

2010, at which time the total market value was $92,751.24. That amount was reduced to $88,217.32 when the check was issued, for reasons not explained at trial.

had been "amply compensated or had adjustments made. . . . [b]oth with respect to the marital property of $58,000 and the attorney's fees. If anything, that she's . . . already received her due."

On June 7, 2012, the circuit court issued an oral ruling. It reiterated the task on remand as follows:

> So essentially what the task was on remand was to determine what portion of the 401(k) was marital property, then to determine the value of the marital property as of the date of the divorce in December of 2008, and then to determine what, if any, of the marital portion should be the subject of an equitable award to Ms. Stansbury, looking to the [FL §] 8–205 factors.

Based on the parties' stipulation, the court found "that the marital portion of the plaintiff's Oracle 401(k) plan as of December 2008 [was] $58,382.34, and the non-marital portion [was] 93,297.06." It then turned to "the real issue . . . what's an equitable thing to do."

The court then addressed each factor in Maryland Code (2006 Repl. Vol.) § 8–205(b) of the Family Law Article ("FL").[2] With respect to marital property, it reiterated that

---

2. Maryland Code (2006 Repl. Vol.) § 8–205(b) of the Family Law Article provides:

> The court shall determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in property described in subsection (a)(2) of this section, or both, after considering each of the following factors:
>
> (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
>
> (2) the value of all property interests of each party;
>
> (3) the economic circumstances of each party at the time the award is to be made;
>
> (4) the circumstances that contributed to the estrangement of the parties;
>
> (5) the duration of the marriage;
>
> (6) the age of each party;
>
> (7) the physical and mental condition of each party;
>
> (8) how and when specific marital property or interest in property described in subsection (a)(2) of this section, was acquired, including the effort expended by each party in accumulating the marital proper-

the only marital property was the Oracle 401(k) plan. With respect to factor eleven, "any other factor that the [c]ourt considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property," the court stated that it had "to look to what's happened over the course of the whole proceedings," noting that "there was a QDRO that was executed" and a "garnishment that happened during the course of time between December 24th, 2008, and today." The court continued:

Ms. Stansbury received a total of $88,217.32, which was decreased from the 92,000 by some mysterious means, somebody took $4,000, but in any event she got 88,000–plus that represented her half of the Oracle plan valued on December 24th, 2008, and, of course, that was because the . . . non-marital portions hadn't been valued.

All right. So that amount was the 66,000, plus the earnings I guess.

Okay. So then in addition over the course of the last couple years, Ms. Stansbury received a total of $24,597.30 from garnishments of Mr. Heit's wages that were taken for the other judgments that [the trial court] awarded that I think totaled about $173,911.53, which, of course, those judgments were ultimately reversed.

Okay. So it looks like the defendant, Ms. Stansbury, has already received a total of $112,814.62 from Mr. Heit. So those factors, I think, have to be taken into account in terms of what's equitable.

---

ty or the interest in property described in subsection (a)(2) of this section, or both;

(9) the contribution by either party of property described in § 8–201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in subsection (a)(2) of this section, or both.

All right. So based on everything, my finding is that it would be, in other circumstances, equitable to do essentially what [the trial court] did, which would be to give Ms. Stansbury 50 percent of the marital portion of the Oracle plan as of the date of December 24th, 2008, which, of course, that would have been $29,191.17, but, as I've already said, she's already received from that plan 88,000–plus, plus she's already received ... the other 24,000–plus, so she's already received $112,814.

So in light of that, I am not going to make any monetary award. I don't think it would be equitable under all these circumstances to make any award, so there will be ... no monetary award based on ... all those factors.

With respect to Ms. Stansbury's request for attorneys' fees, the remand court noted that the divorce court initially awarded $76,571.53. It stated, however, that "in light of everything that's gone on in this case," and "based on all the factors and all the equities," it would deny the request for attorney's fees. The remand court reiterated that its order was "based on all of the factors that were previously considered in the 8–205 factors, but in particular as they relate to the resources and needs of the parties."

On June 11, 2012, an order was entered denying Ms. Stansbury's request for a monetary award, denying her request for attorneys' fees, and denying "all other requests for relief by either party." Neither party appealed the ruling.

On October 9, 2012, Mr. Heit filed a Post–Judgment Motion for Order of Restitution and Other Relief. He asserted that, because the court's order on remand denied Ms. Stansbury any monetary award or attorneys' fees, the amount that "stood in her favor" at the time of the final judgment was "legally zero, in contrast to the at least $112,814.63 ($88,217.32 + $24,597.31) she had amassed, by way of execution, pending Mr. Heit's appeals of [the divorce court's] erroneous and reversed judgments." He argued that, what he "lost under the compulsion of judgments ... should be restored to him by Ms. Stansbury ... given that the judgments were reversed or

vacated on appeal, and the [c]ourt on second remand adjudged that Ms. Stansbury was entitled to nothing." Mr. Heit sought restitution in the amount of $92,751.24, plus lost gains, for the Oracle 401(k), as well as restitution in the amount of $24,597.31, plus interest, for the amount obtained through garnishments.

On November 13, 2012, Ms. Stansbury filed a motion to dismiss Mr. Heit's post-judgment motion for failure to state a claim upon which relief may be granted. She argued that the circuit court had already considered the transfers to Ms. Stansbury in determining not to grant her a monetary award or attorneys' fees, and in denying all other requests for relief. She asserted that Mr. Heit "cannot have it both ways," i.e., arguing at the remand hearing that Ms. Stansbury had already received a $112,000 "windfall," and therefore, the monetary and attorneys' fees award should be zero, and then after the remand order was entered, request that the $112,000 "windfall" be refunded as restitution. Ms. Stansbury asserted that the court's ruling on remand resolved all issues related to the parties' outstanding claims, including the monetary award, attorneys' fees award, and the prior QDRO and money transfers to Ms. Stansbury, and therefore, *res judicata* applied.

On December 3, 2012, Mr. Heit filed an opposition to Ms. Stansbury's motion to dismiss. He argued that the matter of restitution could not have been presented earlier because "it was only after the hearing [during which it] was . . . finally determined that Ms. Stansbury was entitled to . . . no award whatsoever" that the matter of restitution could be raised. He asserted that the remand court never ruled that Ms. Stansbury was entitled to keep the monies she received from the QDRO, or that Mr. Heit was precluded from seeking that amount in restitution, but rather, it determined only that Ms. Stansbury was not entitled to a monetary award given that she already had received $112,000 by way of executed-upon judgments. Thus, he argued, Ms. Stansbury's *res judicata* argument was baseless.

Mr. Heit also filed a motion to specially assign the judge who heard the remand proceedings to the restitution case. In support, he cited that judge's knowledge of the "five- and [a] half year old case," and his knowledge of his own decision on remand.

On December 6, 2012, Ms. Stansbury filed an opposition to Mr. Heit's motion for special assignment, asserting that "all of the Judges of the Circuit Court for Montgomery County, Maryland are qualified to hear this case," and the decision to assign the case should be left to the court and the assignment office. Mr. Heit filed a response, asking "what is the big deal?" The Administrative Judge denied the motion for special assignment.

On January 25, 2013, the court held a hearing on Ms. Stansbury's motion to dismiss Mr. Heit's post-judgment motion for restitution.[3] On February 20, 2013, the court issued a memorandum opinion and order granting Ms. Stansbury's motion. The court stated that the record of the remand hearing made clear "that the [c]ourt considered the monies previously received by the Defendant in reaching its decision," noting that "the [c]ourt *expressly* stated that it was considering the monies received by Defendant from the judgments that were executed prior to the reversal and remand" in determining "what's equitable" regarding a monetary award and attorneys' fees. After reviewing the record of the remand hearing, the court concluded, as follows:

> It is clear from the record that the [c]ourt considered all the evidence that was before it and entered a final judgment in accordance with that evidence. The issue Plaintiff seeks to now raise, specifically the money awarded to the Defendant pre-remand, was considered and adjudicated by this [c]ourt on June 7, 2012. Plaintiff can not now relitigate the same issue. *Res judicata* bars the same parties from litigating on the same claim, or any other claim arising from the same transaction or series of transaction[s] that could

---

3. The judge was not the same judge who heard the case on remand.

have been but was not raised in the first suit.... The [c]ourt finds [the remand judge] resolved all the issues on all the outstanding claims and Plaintiff does not have a claim upon which relief may be granted.

This timely appeal followed.

## DISCUSSION

### I.

### Motion to Dismiss Post–Judgment Motion for Restitution

Mr. Heit states that no "Maryland appellate decision appears to have actually decided a claim of 'restitution following reversal' " in the context of a monetary award. He argues, however, that

Maryland courts have not hesitated to endorse and discuss the principle ... that "[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess."

(quoting RESTATEMENT (FIRST) OF RESTITUTION § 74 (1937)). He contends that the circuit court erred in dismissing his claim for restitution on the ground of *res judicata* because the remand court did not decide the issue of restitution, and he "could not have brought a claim for restitution earlier." [4]

Ms. Stansbury contends that the circuit court properly dismissed Mr. Heit's complaint for restitution. She asserts that the remand court's order was a final judgment between the same parties, and it resolved the same set of facts as those

---

[4]. Mr. Heit also asserts that his failure to post a supersedeas bond to suspend execution of the judgments did not waive his right to seek restitution, and the doctrine of judicial estoppel does not apply because his claim for restitution is not inconsistent with the position he took at the remand hearing. Because, as explained, *infra*, we conclude that *res judicata* applies as a bar to his "restitution" action, we need not address these arguments.

in the restitution action, including the vacated judgments, the 401(k) value and prior transfer, and the total monies already received by Ms. Stansbury pursuant to the QDRO and garnishment.

■ Initially, we must address the nature of the court's ruling dismissing Mr. Heit's restitution claim. Mr. Heit contends that, because Ms. Stansbury's motion to dismiss attached a copy of a transcript of the remand court's oral order, the motion to dismiss should have been treated as a motion for summary judgment, and we must review the order *de novo*. Ms. Stansbury responds that, regardless whether the pleading should be viewed as a motion to dismiss or a motion for summary judgment, Mr. Heit's post-remand restitution action for recovery of the pre-remand QDRO and garnishment transfers is barred by the doctrine of *res judicata* as matter of law.

Ordinarily, in reviewing the dismissal of a complaint on a motion to dismiss for failure "to state a claim upon which relief can be granted," pursuant to Maryland Rule 2–322(b)(2), "we look only to the allegations in the complaint and any exhibits incorporated in it and 'assume the truth of all well-pled facts in the complaint as well as the reasonable inferences that may be drawn from those relevant and material facts.' " *Smith v. Danielczyk*, 400 Md. 98, 103–04, 928 A.2d 795 (2007) (quoting *Ricketts v. Ricketts*, 393 Md. 479, 491–92, 903 A.2d 857 (2006)). Maryland Rule 2–322(c) provides, however, that if matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. Here, the court considered matters outside the proceedings, and therefore, the motion will be treated as one for summary judgment.

Maryland Rule 2–501(f) governs motions for summary judgment and provides that a trial court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "On review of an order granting summary judgment, our analysis 'begins with the determination [of] whether a genuine dispute

of material fact exists; only in the absence of such a dispute will we review questions of law.'" *D'Aoust v. Diamond,* 424 Md. 549, 574, 36 A.3d 941 (2012) (quoting *Appiah v. Hall,* 416 Md. 533, 546, 7 A.3d 536 (2010)). We review the record " 'in the light most favorable to the non-moving party and [we] construe any reasonable inferences that may be drawn from the well-pled facts against the moving party.'" *Id.* (quoting *Muskin v. State Dep't of Assessments & Taxation,* 422 Md. 544, 554–55, 30 A.3d 962 (2011)).

If, after reviewing the record, we determine that "there is no material fact in dispute," we then "determine whether the trial court correctly granted summary judgment as a matter of law." *Doe v. Md. State Bd. of Elections,* 428 Md. 596, 606, 53 A.3d 1111 (2012). "Our determination of whether the trial court's grant of summary judgment is proper 'is a question of law, subject to a non-deferential review on appeal.'" *Id.* at 605, 53 A.3d 1111 (quoting *Tyler v. City of College Park,* 415 Md. 475, 498, 3 A.3d 421 (2010)).

█ In this case, the parties do not dispute the facts. Therefore, we address only a question of law, i.e., whether the circuit court properly granted summary judgment in favor of Ms. Stansbury on the ground of *res judicata.*

In *Colandrea v. Wilde Lake Community Association, Inc.,* 361 Md. 371, 392, 761 A.2d 899 (2000), the Court of Appeals explained:

Under Maryland Law, the requirements of *res judicata* or claim preclusion are: 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits. Therefore, a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit. To avoid the vagaries of res judicata's preclusive effect, a party must assert all the legal theories he wishes to in his initial*

*action, because failure to do so does not deprive the ensuing judgment of its effect as res judicata.* As can be seen, *res judicata* looks to the final judgment on the merits earlier entered in the same case *or same cause* and to the necessary legal consequences of that judgment.

(citations omitted). *Accord Powell v. Breslin,* 430 Md. 52, 64, 59 A.3d 531 (2013). The overarching purpose of the *res judicata* doctrine is judicial economy. *Colandrea,* 361 Md. at 387, 761 A.2d 899 (the *res judicata* doctrine is applied to "avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions").

Here, there is no question that the remand hearing resulted in a final judgment, and the parties are the same. The issue presented is whether the claim in the restitution action is the "same claim."

When an earlier court has entered a final judgment and actually ruled on the matter sought to be litigated in a second court, the " 'same claim' " analysis usually is straightforward. *Colandrea,* 361 Md. at 389, 761 A.2d 899 (quoting *FWB Bank v. Richman,* 354 Md. 472, 492, 731 A.2d 916 (1999)). It is more difficult, however, when the "earlier court has *not* directly ruled upon the matter." *FWB Bank,* 354 Md. at 493, 731 A.2d 916. In that case, "the second court must determine whether the matter currently before it was fairly included within the claim or action that was before the earlier court and *could* have been resolved in that court." *Id.* To make that determination, Maryland courts have adopted the transactional test, i.e., "if the two clams or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously." *Anne Arundel County Bd. of Ed. v. Norville,* 390 Md. 93, 109, 887 A.2d 1029 (2005). "Legal theories may not be divided and presented in piecemeal fashion in order to advance them in separate actions." *Id.* Thus, *res judicata* applies " 'even though the subsequent suit takes a different form or is based on a different cause of action.' " *Blades v. Woods,* 338 Md. 475, 478–79, 659 A.2d 872 (1995) (citation omitted).

We agree with Ms. Stansbury that the remand court considered all outstanding claims and issues with regard to the monetary award, attorneys' fees, the QDRO transfer, and the monies collected pursuant to the wage garnishments in determining an equitable resolution of the facts before it. Mr. Heit repeatedly referenced the monies that Ms. Stansbury had already received in urging the court not to grant a monetary award or attorneys' fees, and the remand court clearly referenced those monies in determining what "would be equitable under the circumstances." If Mr. Heit thought that additional restitution was warranted, he could have, and should have, made that claim during the remand proceedings.[5] Because he did not, *res judicata* barred him from later seeking restitution.

We hold that when a party has paid monies to another person pursuant to a judgment that is later reversed and remanded for further proceedings, any request to recoup the money already paid must be made at the remand proceeding. If the party does not do so, a subsequent claim for restitution is barred by principles of *res judicata*. Accordingly, the circuit court here properly dismissed Mr. Heit's claim restitution.

## II.

### Motion for Special Assignment

■ Mr. Heit next asserts that the Administrative Judge abused its discretion in failing to assign the case to the

---

5. In *Rand v. Rand*, 40 Md.App. 550, 553, 392 A.2d 1149 (1978), upon which Mr. Heit relies, this Court held that a party making child support payments pursuant to a court order has no right to restitution or recoupment following a reversal or modification of the award on appeal. We made clear, however, that the trial court has discretion to order recoupment for "overpayment" if a child support order is reversed on appeal. *Rand*, therefore, does not support Mr. Heit's argument that he could not make a claim for restitution at the remand hearing. *See also Smith v. Smith*, 866 So.2d 588, 590 (Ala.Civ.App. 2003) (on remand after appellate court's reversal of an award to wife of 32% of husband's 401(k), the trial court ordered wife to restore to husband the $24,346.23 she had withdrawn from his 401(k) account).

remand judge. In support, he cites the remand court's "extensive familiarity with the case and the fact that Ms. Stansbury relied on his oral opinion as the basis for dismissal."

Ms. Stansbury disagrees. She asserts that Mr. Heit "points to no basis in the law or the Maryland Rules in support of his assertion that the Administrative Judge abused his discretion," and in any event, pursuant to *Strickland v. State*, 407 Md. 344, 357, 965 A.2d 887 (2009) and Maryland Rule 16–101(d), the Administrative Judge properly exercised its authority to assign which judge would hear the case.

"The inherent authority of a court to control its docket is widely recognized." *Wynn v. State*, 388 Md. 423, 437, 879 A.2d 1097 (2005). The authority of the County Administrative Judge "encompasses all facets of the internal management of our courts." *Whitaker v. Prince George's County*, 307 Md. 368, 376, 514 A.2d 4 (1986). In that regard, Maryland Rule 16–101(d)(2) provides that "a County Administrative Judge shall be responsible for the administration of justice and for the administration of the court for that county," including the following duties:

*The duties shall include:*

(i) supervision of all judges, officers, and employees of the court, *including the authority to assign judges* within the court pursuant to Rule 16–103 (Assignment of Judges);

(ii) *supervision and expeditious disposition of cases filed in the court and the control of the trial calendar and other calendars, including the authority to assign cases for trial and hearing pursuant to Rule 16–102* (Chambers Judge) and Rule 16–202 (Assignment of Actions for Trial).

(Emphasis added).

In turn, Maryland Rule 16–103 provides, in relevant part:

c. **County Administrative Judge.** Except for assignments made pursuant to this Rule, *assignment of judges* within the Circuit Court for a county in which there is more than one resident judge *shall be made by the County Administrative Judge.* The assignments may be made orally or in writing.

d. **Use of assignment power.** The assignment power herein established *shall be exercised to ensure full use of judicial personnel throughout the judicial system, to equalize, to the extent feasible, judicial workloads and to expedite the disposition of pending cases.*

(Emphasis added).

In *Strickland,* 407 Md. at 358, 965 A.2d 887, the Court of Appeals observed that the provisions of Md. Rule 16–101 "make it clear that the assignment of Circuit Judges for trials or hearings is entirely within the province of Circuit and County Administrative Judges, subject only to the supervisory authority of the Chief Judge of the Court of Appeals and the administrative rules adopted by the Court of Appeals." And Md. Rule 16–103 "underscores the authority of Administrative Judges over judicial assignments." *Id.*

Mr. Heit directs us to no Maryland authority, nor or we aware of any, that supports an argument that the Administrative Judge's denial of Mr. Heit's motion for special assignment was an abuse of discretion. Given the broad authority of a court to control its docket, as well as an Administrative Judge's exclusive authority to assign judges to expedite cases in its court in an efficient manner, we will not disturb the ruling of the Administrative Judge.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**