REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 744

September Term, 2016

_____

JUDITH WOOLRIDGE

v.

LAUREN ABRISHAMI, ET AL.

_____

Woodward, C.J.,
Eyler, Deborah S.,
Graeff,

JJ.

_____

Opinion by Graeff, J.

_____

Filed:  July 6, 2017

This appeal arises from an automobile accident that occurred on May 23, 2014. On that date, 18-year-old Lauren Abrishami ("Lauren"), appellee, who was operating a motor vehicle owned by her mother, Brigitte Abrishami ("Ms. Abrishami"), also an appellee, struck pedestrian Judith Woolridge, appellant, as Ms. Woolridge attempted to cross the street. Ms. Woolridge filed suit in the Circuit Court for Montgomery County alleging negligence against Lauren and negligent entrustment against Ms. Abrishami.[1] The court ultimately granted Ms. Abrishami's motion for summary judgment and proceeded with a jury trial regarding the negligence claim against Lauren. At the conclusion of trial, the jury found that Lauren was negligent, but it also found that Ms. Woolridge was contributorily negligent, thereby precluding recovery.

On appeal, Ms. Woolridge raises four questions for our review, which we have rephrased, as follows:

> 1. Did the circuit court err in allowing Lauren to raise the defense of contributory negligence at trial?
>
> 2. Was the evidence sufficient to submit the issue of Ms. Woolridge's contributory negligence to the jury?
>
> 3. Did the circuit court err in denying Ms. Woolridge's request for a special jury instruction on a pedestrian's right of way in crossing at an intersection?
>
> 4. Did the circuit court err in granting summary judgment in favor of Ms. Abrishami on the issue of negligent entrustment?
>
> For the reasons set forth below, we shall affirm the judgment of the circuit court.

---

[1] There also was an allegation of agency, but Ms. Woolridge conceded below that, at the time of the accident, Lauren was not her mother's agent, and there is no issue raised on appeal regarding this claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 5, 2015, Ms. Woolridge filed a three-count Complaint. In Count I, Ms. Woolridge alleged that, as she was "crossing the street in a crosswalk at Main Street and Market Street East . . . in Gaithersburg, Maryland," Lauren negligently made a left turn and struck her, causing injuries. Count III alleged that Ms. Abrishami negligently entrusted Lauren with her vehicle.[2] In their Answer, Lauren and Ms. Abrishami asserted several affirmative defenses, including that "Plaintiff was contributorily negligent."

On July 29, 2015, the court issued an "Order for Mandatory Settlement Conference/Pretrial Hearing." It scheduled a pretrial settlement conference and a pretrial hearing on February 18, 2016, and directed the parties to prepare a written joint pretrial statement, which "shall contain," among other things, "a concise statement of all claims and defenses which that party is submitting for trial."[3] The order further directed the parties to identify each pattern jury instruction that the parties intended to offer at trial, with an indication of those agreed upon and those not agreed upon.

The Joint Pretrial Statement filed with the court on February 18, 2016, provided, in relevant part, as follows:

> **1. Nature of the Case:** The instant action arises out of a pedestrian-motor vehicle accident that occurred on May 23, 2014. The Plaintiff is making a claim for personal injuries and damages related to the incident. The

---

[2] As indicated, Count II, alleging that Lauren was acting as Ms. Abrishami's agent when she negligently struck Ms. Woolridge, was resolved below and is not an issue in this appeal.

[3] The order stated that the parties would "participate in good faith in a Settlement Conference," and if settlement was not reached, "proceed to a Pretrial Hearing before the Administrative Judge in order to set a trial date and resolve other pretrial issues."

2

Plaintiff contends Defendant Lauren Abrishami was negligent in the operation of her vehicle.

## 2. **Claims and/or Defenses**

**A) Plaintiff:** The Plaintiff claims Defendant, Lauren Abrishami, was negligent in the operation of her vehicle, thereby causing the accident and Plaintiff's injuries, including a tibial plateau fracture that required surgical intervention. The Plaintiff has continuing difficulties walking and kneeling, and any activity requiring use of her left leg, with daily pain. The injury to her leg is permanent. The Plaintiff's medical[] bills total $56,232.51 to date, and lost income of approximately $2,719.54.

**B) Defendant:** The Defendant denies the nature and extent of Plaintiff's injuries and permanency.

*** *

**4. Disputed Issues:** Except as set forth above, all issues of liability and damages are in dispute.

Lauren did not include a proposed jury instruction on contributory negligence in the pretrial statement. She did state, however, that she would propose "[a]dditional instructions to be submitted at trial to conform to the evidence," and she reserved the right to "request additional jury instructions based upon the evidence at trial."[4]

During discovery, Ms. Woolridge asked about Lauren's claim of contributory negligence. Specifically, Plaintiff's Interrogatory Number 8 asked:

State the manner in which you say the accident complained of happened, giving the various speeds, positions, directions and locations of all vehicles involved in the said accident during their approach to, at the time of, and immediately following the happening, and in so doing, describe how the Party propounding these Interrogatories, or any person or party, or its agent(s) or employee(s) was negligent or caused or contributed to the happening of the occurrence. Include in your answer:

---

[4] The record includes an "ADR Data Memorandum" dated February 22, 2016, which states that the case was not settled.

3

a. How fast were you traveling 200 feet before the accident? 100 feet before the accident? 50 feet before the accident?

b. At the time you first observed the Plaintiff, identify the Plaintiff's location, the location of your car from the Plaintiff, and your speed.

c. Set forth your route and movements, for the last three blocks leading up to the accident, including in your answer any stops, turns, lane changes and the like which occurred during that time.

The record reflects that Lauren initially provided to opposing counsel an unsigned response, stating: "I stopped at the stop sign and began to make a left from Main Street onto Market Street. As I made the turn, I was distracted, talking to my cousin and did not see the Plaintiff right away, as soon as I did, I slammed on my brakes but it was too late and I hit the Plaintiff."

On May 23, 2016, the day of trial, Lauren provided signed answers, containing the following amended response: "See the Defendant's discovery deposition dated October 5, 2015, at page 40."[5] This portion of Lauren's deposition provided:

Q. Can you tell me in your best recollection how did the incident occur?

A. I was – I turned to make the left and I didn't see her and Taylor saw her at the last second. She said "Slow down," and I slammed on my brakes from 10 miles per hour to about 1 mile per hour, and then I tapped her, and then she fell.

Q. Okay. So I'm going to back you up to the stop sign. Did you come to a complete stop at the stop sign?

A. Yes, before the white line.

Q. And how long would you say you stopped for?

---

[5] The signed interrogatories were dated the day trial began, and counsel for Ms. Woolridge advised the trial court that the unsigned interrogatories, which are included in the record extract, were provided a few days prior to that date.

4

A. Three seconds.

Q. Were there any other cars as you stopped there for that three seconds? Do you remember seeing any other cars around?

A. No.

Q. But you stopped for three seconds. Did you see any people around?

A. No.

During her October 5, 2015, deposition, however, Lauren also was asked whether she was aware of anything Ms. Woolridge "could have done to avoid being hit." Lauren responded: "I wasn't aware of like where she was situated and if she looked both ways. I'm not sure." She did note, however, that as she slowed the vehicle, Ms. Woolridge "just like stood there. She didn't move."

During the time that discovery was proceeding, Ms. Abrishami filed a motion for summary judgment on the claims against her. Counsel for Ms. Abrishami argued that, although Lauren had been driving for only a year, there was not enough evidence to submit to the jury the claim that Ms. Abrishami was negligent in entrusting Lauren to operate the vehicle. Counsel asserted that, although Lauren had one prior "very minor incident," where Lauren hit a curb after her dog climbed on her while she was driving, Ms. Abrishami took corrective action and advised Lauren not to drive with the dog in the car. Thus, counsel stated, Ms. Abrishami had no reason to believe that Lauren would be involved in an accident, and based on Lauren's "completely clear" driving record, an accident was not foreseeable.

Counsel for Ms. Woolridge responded that, in a negligent entrustment claim, three factors must be considered: "youth, inexperience or otherwise," and it is a "fact-based determination[]" for the jury. Counsel argued that Lauren, a teenage driver, had been driving less than a year, did not drive the vehicle regularly, and previously had been in an accident while distracted. The accident involving Ms. Woolridge was "another distracted driving scenario as you had with the dogs," and Ms. Abrishami "should have implemented some additional driver training, restrictions, something on this girl, on balance."

Counsel for Ms. Abrishami argued that, contrary to Ms. Woolridge's focus on Lauren's youth and inexperience, the question was whether Lauren had dangerous propensities and Ms. Abrishami knew of those propensities and should have foreseen harm.

During her deposition, Lauren testified that the prior accident occurred in May 2015. She got her driver's license in her senior year of high school, after taking a driver's education class. She took the bus to school, however, and in May 2014, she drove "[f]or errands mostly," and she "rarely left the house." Lauren had not received any traffic tickets prior to the accident involving Ms. Woolridge.

In granting summary judgment on the negligent entrustment claim, the court stated as follows:

> Regarding the issue of negligent entrustment, so I would say that generally these cases come down to a dispute of material fact where the jury would have to decide whether or not there's evidence that the mother knew of these dangerous propensities of the daughter driving.

> In this case, the evidence that has been presented to me that would be presented to the jury is that the driver had previously been involved in an incident where while driving a car a dog jumped in her lap and that caused her to, as a result of that, she swerved or she drove the car in a manner that

6

resulted in a scratch on the side of, the passenger side of the car. No evidence that the car was damaged in any other way, no evidence that there was a requirement that the car be repaired and the evidence is that when the mother found out about the, how the accident happened, that the dog jumped in the lap, that she told the daughter you can't drive with the dog in the, in the car anymore.

The facts of this case are the dog was not in the car. I understand a cousin was in the car. So the other evidence is that she's 18, she had her license for a year, that she had not been driving the car in the five months prior to the accident. The other evidence is that she has no moving violations, she has no traffic record of any kind, she was on a provisional license and that she took a driver class before she got her license.

In looking at that, I, I don't think that there's any evidence whatsoever that shows that the mother knew or should have known that there [were] any dangerous propensities of the daughter's driving because there's no evidence of any dangerous propensities of driving. So, therefore, I'll grant the motion for summary judgment as to Count 3.

On May 23, 2016, a two-day trial began. During opening statements, counsel for

Lauren stated that the jury would

hear His Honor instruct you on the law, that there are reciprocal duties of who is supposed to do what and when and you simply cannot step off a curb because you're in a crosswalk in front of a moving vehicle. That's the law that you'll hear when that comes. So you will have to determine who is at fault, why did they do what they did? Again, there's no question that my client hit the plaintiff in the crosswalk but, again, the analysis doesn't stop there.

Counsel continued that

in order to award compensation as a result of injuries, first you must find that the defendant was at fault and that the plaintiff did nothing to contribute to this accident. Once you find that the defendant was solely at fault and the plaintiff did nothing to contribute to this accident, then you can award damages because she was injured. That is not at issue in this case.[6]

---

[6] On appeal, counsel for Ms. Woolridge asserts that, during the next break, in an unrecorded bench conference, counsel for Ms. Woolridge asked for a ruling (continued . . .)

Officer Greg Knott, a member of the Montgomery County Police Department, then testified that he "was dispatched to a vehicle accident involving a pedestrian." He described the intersection of Main Street and Market Street East as having three stop signs and marked crosswalks. When Officer Knott arrived shortly after 7:00 p.m., it was still daylight. The weather was sunny. Ms. Woolridge was in the crosswalk on Market Street East, and Lauren's vehicle was stopped in a position turning left from Main Street onto Market Street East. Lauren's vehicle was "almost straight . . . if you were to draw a 90-degree line down the roadway and across the crosswalk, it was, for the most part 90 headed towards Market Street East." He continued: "The wheels were turned just slightly to the left as would depict any vehicle making a left turn onto that roadway. She was in the process of making the turn, so she was 98 percent through the process of turning onto that roadway." Ms. Woolridge was in the roadway about "halfway across the crosswalk." Officer Knott interviewed Lauren, who told him that she was going to the movies with her friend, and as she made the left turn onto Market Street East, she was having a conversation with her friend and "got distracted."

Ms. Woolridge, who was 67 years old at the time of trial, testified that she lives in an apartment in Kentlands Manor. Her son lives several blocks away from her apartment. On the day of the accident, at approximately 7:00 p.m., Ms. Woolridge began to walk to

---

(. . . continued) prohibiting questions or argument on the issue of Ms. Woolridge's contributory negligence because there had been no such contention prior to trial, but the court declined to issue such a ruling, indicating that it would hear further argument on the issue later in the trial. The docket entries reflect that Ms. Woolridge's oral motion in limine to prevent cross-examination regarding contributory negligence was denied.

her son's house to prepare dinner for his birthday.  When she got to the intersection of East Market Street and Main Street, before stepping off the curb, she stopped and looked "[l]ong enough to see that there was nothing coming."  She did not see any cars approaching the crosswalk from any direction, did not hear any sounds, and did not "recall seeing a car anywhere in that intersection," so she proceeded into the crosswalk at an "average speed, gait."  The next thing she remembered was a "hard, hard, fast hit and [she] hit the ground."  She could not recall how many steps she had taken after stepping off the curb and was unable to say how far into the crosswalk she was when she was hit.  After she was hit, Ms. Woolridge was "completely stunned" and in "[v]ery severe pain in [her] head and [her] leg."  Ms. Woolridge was taken to the emergency room by ambulance.

Lauren testified that, at the time of the accident, she was 18 years old and had been driving for approximately one year.  On the day of the accident, she and her cousin/friend, Taylor, were going to the Kentlands movie theater to see a movie.  When they arrived, they saw that the movie they intended to see was not playing at that theater.  After determining that the movie was playing at another theater, they started driving there.  As Lauren drove, she and Taylor were talking.  When she approached Market Street East from Main Street, she stopped at the stop sign for three seconds, looked for cars and pedestrians, and then started to turn.  She agreed that there was nothing obstructing her view from the crosswalk, and she stated that she did not see Ms. Woolridge "until the last moment."

As Lauren turned left, her attention was ahead of her, but "the moment before the accident occurred," she "did glance over to" Taylor "as she was talking, but it was only for a moment."  As she glanced over to Taylor, Taylor said "watch out," and Lauren slammed

9

on her brakes. After realizing that she had struck someone, Lauren stopped her car immediately and did not move it again until the police arrived. A photograph, marked as Plaintiff's Exhibit No. 3, indicates that Lauren's vehicle was in the middle of the street and mostly through the crosswalk. Lauren surmised that, for her to have hit Ms. Woolridge in the middle of the crosswalk, Ms. Woolridge was approximately 15 feet from the curb.

After Lauren hit Ms. Woolridge, she jumped out of her car and saw Ms. Woolridge "lying there," but her immediate reaction was "that everything was fine because [she] went from about five to 10 miles per hour to about 1 mile per hour and [she] thought the impact felt . . . very minor." Lauren asked Ms. Woolridge if she was alright, but Ms. Woolridge responded that she was not. A man on the side of the road called 911.

On cross-examination, Lauren agreed that she had almost completed the left turn onto East Market Street, and her vehicle was "almost straight onto East Market Street when the accident" occurred. She stated that the entire time she was turning, but for glancing over at Taylor prior to the moment of impact, she was looking forward. When Taylor said "stop," Lauren turned and saw Ms. Woolridge immediately before striking her. Ms. Woolridge was positioned "a little to the right near the front" on the right-hand side of Lauren's vehicle.

At the end of the first day of trial, the court briefly discussed the issue of the affirmative defense of contributory negligence, stating:

> Now the, Rule 2-323 talks about the failure of a defendant to include an affirmative defense in its original answer, quite properly amended answer bars the defendant from relying on the defense to obtain a judgment. That's the Gooch v. Miller Mechanical [Systems, Inc., 81 Md. App. 376, cert. denied, 319 Md. 484 (1990)]. I didn't see anything in the annotations that

10

once pled that it's lost if certain things aren't done, but you have a case you're going to give my, my law clerk?  So you'll give her the cite or the – either one after we recess.

The next day, counsel for Ms. Woolridge argued, citing *Mitchell v. Montgomery*, 88 Md. App. 542 (1991), that Lauren had not given adequate notice of the contributory negligence defense because she did not state facts in her answers to interrogatories, or in her deposition, that supported that defense.  The court denied the motion, stating that "my ruling is going to be once it's put in the, in the answer, it's preserved unless it's affirmatively withdrawn or abandoned or some way[] communicated that they no longer wish to proceed.  And I do think that puts the plaintiff on notice."[7]

Counsel then argued that, even if the defense was preserved, there was insufficient evidence of Ms. Woolridge's negligence to allow the issue of contributory negligence to go to the jury.  The court responded by asking counsel for Lauren to address the claim of contributory negligence, stating that the evidence,

> in the light most favorable to both sides, to your case is that she was walking her normal gait, nobody has refuted that, she was in a crosswalk, it was light or 7 o'clock on a May day and your client's testimony is that I, I turned to talk to my friend and my friend told me, look out.  What, what was the evidence that the plaintiff did something wrong?

Counsel for Lauren responded that "there's case law that indicates that if a person looks, but does not see what is present to be seen, that alone gives rise to an inference of negligence."  Counsel noted that the police officer testified that the accident occurred when

---

[7] The court stated that there was no case providing that an affirmative defense raised in an answer is abandoned based on the failure to reassert it in discovery responses.  It further noted that Ms. Woolridge could use the answers to interrogatories to impeach Lauren.

11

Lauren "was 98 percent through her turn," and "the plaintiff was half, her body was found when he got there halfway through the crosswalk. That means that the defendant was established in the intersection, ready to be seen by a plaintiff who was coming off of the sidewalk." Counsel argued that the car was "almost 90 degrees . . . going straight according to the police officer," and "the duties are reciprocal as far as seeing what there is to be seen, as far as the position of the car, as far as how far she got, as far as where she came from."

> The court ruled as follows:

> I think the bottom line here is neither one saw the other one. Neither one is violating a rule of the road per se based on the evidence. You have a car making [] an illegal left-hand turn. By her testimony she stops at the stop sign and the plaintiff is legally in a crosswalk crossing. They both have to give way to the other if seen and see what's there to be seen. It's, but it's not crystal clear. I mean normally in a case you have somebody seeing the other one and I just think, I think it's a jury issue. I think, and I don't weigh the strength [o]f the arguments, it's, whether or not the defense has generated evidence to get that instruction. So I'll deny the request to remove the contributory negligent argument and instruction. So I'll grant, I'll give the contributory negligent instruction and, obviously, let the attorneys argue it and the jury decide.

The court then instructed the jury. During closing argument, counsel for Ms. Woolridge stated that, with respect to liability, what he "thought were clear facts at the start of the trial are hotly disputed by the defendant." Despite having admitted "her own fault," Lauren was now focused on proving that Ms. Woolridge was contributorily negligent, "in an effort to get out from under what seemed to be very clear facts of her own negligence in causing the accident." Counsel stated that there was "no evidence that she darted out, she did anything unsafe," but Lauren was arguing that, because Ms. Woolridge did not see Lauren's car coming, she could be held negligent as well.

12

Counsel for Lauren responded that Ms. Woolridge did not meet her burden of proof because she failed to prove "why this accident happened" or "how this accident happened." Accordingly, she failed to prove, "by a preponderance of the evidence the first question," i.e., that Lauren "was negligent and contributed or caused this accident." Counsel stated that plaintiff's testimony essentially was "I stopped and looked and I don't know what happened." And although the police officer testified that Lauren was 98 percent through her turn, Ms. Woolridge "never saw the vehicle," despite "that you would think that a person who is walking, who has got their eyes open in daylight would see what there is to be seen." Counsel argued that, because there was no evidence what actually happened, Ms. Woolridge had not met her burden of proof that Lauren was negligent.

With respect to contributory negligence, counsel stated that

all that we know is, for a fact, that she failed to see what was there. The car there coming at her, about 10 miles an hour from a dead stop. Why? She doesn't tell you why. If you're not satisfied why, how can you find that she used ordinary, reasonable care for her own safety?

The jury ultimately found Lauren negligent and Ms. Woolridge contributorily negligent. This appeal followed.

**DISCUSSION**

**I.**

Ms. Woolridge contends that the circuit court erred in allowing Lauren to raise the defense of contributory negligence at trial. She acknowledges that Lauren raised this defense in her answer, but she asserts that, because Lauren failed to specify any negligent

13

conduct by Ms. Woolridge in discovery, or "even mention contributory negligence in the Joint Pretrial Statement," the court should have precluded this defense at trial.

Lauren contends that the circuit court did not err in ruling that she could raise the affirmative defense of contributory negligence at trial. Initially, she argues that she raised the defense in her answer, she never waived the defense, and there is no rule or case law that supports the argument that she was required to preserve the defense "at each stage of litigation after the defense was properly raised in the answer and not subsequently waived. Moreover, she asserts that Ms. Woolridge "was not subject to unfair surprise" because she had the opportunity to conduct discovery, raise any challenges to discovery prior to trial, and "seek clarification of [] defenses raised in the Answer."

Finally, Lauren suggests that she did preserve the defense during discovery and the pretrial statement. She notes that, during her deposition, when asked if there was anything that she was "aware of as we sit here today that [Ms. Woolridge] could have done to avoid being hit," her response was that she was not aware where Ms. Woolridge "was situated and if she looked both ways." Lauren asserts that this response "clearly indicates that depending on facts that were solely within the knowledge of Plaintiff and were not known by Defendant, there may be an issue as to whether Plaintiff contributed to the occurrence." With respect to the Joint Pretrial Statement, Lauren asserts that she clearly indicated that, other than the facts to which she stipulated, "liability and damages are in dispute," and she would submit further jury instructions at trial "to conform to the evidence."

As the parties acknowledge, Lauren raised contributory negligence as an affirmative defense in her Answer. *See* Md. Rule 2-323(a) ("Every defense of law or fact to a claim

14

for relief in a complaint . . . shall be asserted in an answer."); Md. Rule 2-323(g) (contributory negligence is an affirmative defense that must be pled in an answer). The failure to include an affirmative defense in a defendant's answer or amended answer "bars the defendant from relying on the defense to obtain judgment in its favor." *Gooch*, 81 Md. App. at 385.

In *Scott v. Jenkins*, 345 Md. 21 (1997), the Court of Appeals observed that pleading serves four important purposes:

(l) [it] provides notice to the parties as to the nature of the claim or defense;
(2) [it] states the facts upon which the claim or defense allegedly exists;
(3) [it] defines the boundaries of litigation; and
(4) provides for the speedy resolution of frivolous claims and defenses.

345 Md. at 27-28. "Of these four, notice is paramount." *Id.* at 28.

Here, on the basis of her affirmative defense, Lauren provided Ms. Woolridge with notice that she intended to assert the defense of contributory negligence at trial. Ms. Woolridge contends, however, that Lauren's subsequent failure to explicitly assert this defense in discovery or in the joint pretrial statement resulted in Lauren waiving this defense. We are not persuaded.

Ms. Woolridge directs us to no authority that directly supports the proposition that a party raising the defense of contributory negligence must affirmatively renew it throughout the litigation. Nor have we found any authority that supports Ms. Woolridge's broad assertion that an affirmative defense raised in an answer is, in every case, automatically waived by the failure to reassert it in discovery or the pretrial statement.

15

To be sure, there may be situations where an affirmative defense raised in an answer subsequently will be waived. As the trial court noted, a party could affirmatively withdraw or abandon such a defense. Or a party's conduct could communicate the intent to abandon the defense. For example, there is authority in other jurisdictions that a defense that goes to the threshold issue of the court's jurisdiction can be waived after being raised in an answer when subsequent actions show an intent to submit to the court's jurisdiction. *See, e.g., Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (personal jurisdiction defense lost where defendants "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction," stating that the "court could properly conclude that the defendants' delay in urging this threshold issue manifests an intent to submit to the court's jurisdiction").[8]

Here, there was no affirmative waiver of the defense of contributory negligence. Indeed, as Lauren argues, her discovery responses and pretrial statement were sufficiently vague that arguably they left the issue open. They did not, however, make clear the basis for any contributory negligence defense. The issue, then, is whether counsel's conduct in failing to specifically assert the defense in discovery and the Joint Pretrial Statement constitutes a waiver of the defense by conduct.

We hold that a party who has asserted an affirmative defense in an answer does not, in every case, as a matter of law, waive that defense by the failure to reassert it in discovery

---

[8] In Maryland, the defense of lack of personal jurisdiction must be raised before filing an answer. Md. Rule 2-322(a). In federal court, however, a defendant is permitted to file an answer asserting that defense. Fed. R. Civ. P. 12(b)(2).

16

or a pretrial statement. In reaching this conclusion, we note that there is nothing in Maryland Rule 2-504.2, which provides for the court to order a pretrial conference and a written pretrial statement, that indicates that a failure to include in a pretrial statement information regarding the affirmative defense of contributory negligence would result in a waiver of that issue. Rather, the rule states that various matters, including defenses, "may" be considered at a pretrial conference. Md. Rule 2-504.2(b). *See also* MARYLAND RULES COMMENTARY Rule 2-504.2, 487 (4th ed. LexisNexis Matthew Bender) ("[P]retrial conference is discretionary, as is the scope of matters discussed if one is held. . . .").

If decisions are made at a pretrial conference, however, the court "shall enter an order that recites in detail [these] decisions," and this "order controls the subsequent course of the action but may be modified by the court to prevent manifest injustice." Md. Rule 2-504.2. Thus, if a pretrial order had issued here, and it listed defenses raised, but did not include contributory negligence, there would be a better argument that the defense had been waived. *See Eagle-Picher Indus., Inc. v. Balbos*, 84 Md. App. 10, 34 (1990) (court properly exercised discretion in not allowing testimony of witness not listed in pretrial order), *rev'd in part on other grounds*, 326 Md. 179 (1992). The record, however, does not show that any such order was issued here. Under these circumstances, Lauren's failure

17

to list the defense of contributory negligence in the Joint Pretrial Statement, which stated only that "liability and damages are in dispute," did not constitute a waiver of that defense.[9]

We thus turn to the discovery issue. As Ms. Woolridge argues, the discovery process is designed to allow parties to seek further detail regarding the other side's claims and defenses and "eliminat[e], as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation." *Rodriguez v. Clarke*, 400 Md. 39, 57 (2007) (citations and internal quotations omitted). If a litigant believes that sufficient information regarding claims or defenses has not been given, however, there are remedies available. For example, the litigant may move for an order compelling discovery, *see* Md. Rule 2-432(b), or move for sanctions, including an order refusing to allow the non-compliant party to pursue designated defenses. Md. Rule 2-433(a)(2).

Here, Ms. Woolridge made no objection to the discovery responses provided by Lauren. She did not move to compel factual support for the affirmative defense of contributory negligence; and she did not move for sanctions or an order to strike this defense prior to trial.[10]

---

[9] We are not condoning the practice of filing pretrial statements that do not fairly encompass the claims and defenses being raised. Counsel that follow such a practice do so at their own peril because a judge, under the facts of a specific case, could determine that the failure to adequately assert a defense in the pretrial statement and discovery was so prejudicial to the plaintiff that the defense should not be permitted.

[10] The record extract includes signed answers dated the day trial began. Counsel for Ms. Woolridge did not move for a postponement on the ground that these answers were insufficient to proceed to trial.

18

In *Payne v. Whitten*, 948 So. 2d 427 (Miss. 2007), the Supreme Court of Mississippi considered whether the circuit court erred in denying a motion for mistrial or for sanctions under the discovery rules after the defendant gave trial testimony, not set forth in interrogatories, in support of the affirmative defense of contributory negligence. The plaintiff sued the defendant for injuries she received in a one-car accident, and the defendant raised the affirmative defense of contributory negligence. *Id.* at 428. During discovery, the defendant explained that the accident occurred when he "overcorrected [his] position in the road and went onto the right shoulder of the road which gave way causing the right front of my vehicle to drop." *Id.* at 429. At trial, however, the defendant stated that, immediately before the accident, the plaintiff had been on his side of the vehicle kissing him, a claim that the plaintiff disputed. *Id.* Plaintiff's counsel requested a mistrial or sanctions, arguing that the defendant's statements prejudiced the plaintiff due to the "surprise revelation of a cause of the accident." *Id.* The circuit court denied the motions, finding that the discovery responses were incomplete but not untruthful. *Id.*

The Mississippi Supreme Court upheld this ruling, noting that the defendant had raised contributory negligence as a defense in his answer, and plaintiff had not pursued the contributory negligence defense beyond defendant's unresponsive interrogatory answer. *Id.* at 430. The court ultimately found that plaintiff was not prejudiced because she was able "to impeach [the defendant], who was cross-examined extensively about his previous statements in which he had never mentioned that [the plaintiff] was kissing him." *Id.* It held, therefore, that the trial judge "did not abuse his discretion by denying [the plaintiff] a mistrial or other relief for [the defendant's] discovery violations." *Id.* at 431.

19

Similarly, here, the circuit court did not abuse its discretion in declining to strike the defense of contributory negligence after the trial began. Lauren had asserted the defense in her answer, and although her discovery responses were not a model of clarity, they were not untruthful. This case is different from cases where expert testimony not disclosed in discovery was excluded. *See Mitchell v. Montgomery County*, 88 Md. App. 542, 550-54 (1991) (court abused discretion in admitting expert testimony not disclosed in discovery). Here, Lauren did not introduce new facts not previously disclosed, but only argued inferences based on Ms. Woolridge's conduct.[11] Ms. Woolridge was not prejudiced where the defense was based on her conduct and she could impeach Lauren with her discovery responses.

In sum, we hold that an affirmative defense raised in an answer is not automatically waived by the mere failure to reassert it in discovery or the pretrial statement. The circuit court did not err or abuse its discretion in its ruling to that effect and in allowing Lauren to present the defense of contributory negligence.

## II.

Ms. Woolridge next contends that the trial judge erred in finding sufficient evidence of plaintiff's contributory negligence "to send the issue to the jury." She contends that Lauren was required to show that Ms. Woolridge was negligent and her negligence was a proximate cause of her injuries, and Lauren failed to show either. With respect to

---

[11] Ms. Woolridge does not identify any evidence that came in that was not disclosed in discovery. The claim on appeal is that the court erred in allowing the defense of contributory negligence to be asserted at trial.

20

negligence, Ms. Woolridge asserts that the evidence indicated that, "after checking for cars in or at the intersection, [she] stepped in normal fashion from the curb," "entered the pavement within the protection of a painted crosswalk," and was in the center of the roadway when she was "suddenly struck" by Lauren. She asserts that, under these circumstances, she was not "under a duty to continually look for and guard against the possibility of an intruding motorist."

Ms. Woolridge further asserts that, even assuming that she should have "been on perpetual guard for a negligent motorist, the record is bare as to when the Plaintiff reasonably should have made that observation in this case, and whether, **at that point**, there was then time for the Plaintiff to safely avoid the peril caused by the Defendant." In this regard, she asserts that Lauren was "obligated to present evidence, and did not, that the Plaintiff's purported inattention deprived her of an **available** opportunity to avoid the accident."[12] Thus, she argues, it was "improper for the trial judge to allow this issue to go to the jury in the absence of an affirmative showing by the Defendant that had the Plaintiff seen the car turning toward her instead of yielding, she could have then avoided the accident."

Lauren contends that the circuit court properly submitted the issue of contributory negligence to the jury. She asserts that a plaintiff may be contributorily negligent when she fails to observe ordinary care for her safety, and there was sufficient evidence in this

---

[12] Ms. Woolridge suggests the following as an example of such evidence: "[A]nother pedestrian who would testify he/she was able to realize the car was not stopping and successfully avoid the collision."

21

case from which the jury could find that Ms. Woolridge "did not look or listen or failed to heed to what she saw or heard."

In *Coleman v. Soccer Association of Columbia*, 432 Md. 679, 696 (2013), the Court of Appeals explained:

> Under the doctrine of contributory negligence, a plaintiff who fails to exercise ordinary care for his or her own safety, and thus contributes proximately to his or her injury, "is barred from all recovery, regardless of the quantum of a defendant's primary negligence." *Harrison v. Montgomery Cnty. Bd. of Ed.*, 295 Md. 442, 451 (1983). Contributory negligence is the "neglect of duty imposed upon all men to observe ordinary care for their own safety," *Potts v. Armour & Co.*, 183 Md. 483, 490 (1944), and refers not to the breach of a duty owed to another, but rather to the failure of an individual to exercise that degree of care necessary to protect him or her self. *Baltimore Cnty. v. State, Use of Keenan*, 232 Md. 350, 362 (1963). An "all-or-nothing" doctrine, contributory negligence operates in application as a total bar to recovery by an injured plaintiff.

(parallel citations omitted).

Ordinarily, the issue of contributory negligence is a question of fact for the jury to resolve. *See McQuay v. Schertle*, 126 Md. App. 556, 569, *cert. denied*, 356 Md. 18 (1999). "Only when no reasonable person could find in favor of the plaintiff on the issue of contributory negligence should the trial court take the issue from the jury." *Id.* When measuring contributory negligence, the standard of care "is the conduct of an ordinarily prudent person under similar circumstances." *Faith v. Keefer*, 127 Md. App. 706, 747, *cert. denied*, 357 Md. 191 (1999).

The burden of proving contributory negligence rests on the defendant. *Myers v. Bright,* 327 Md. 395, 403 (1992). A defendant's burden of production on the issue of contributory negligence is slight, and if she introduces "more than a 'mere scintilla of

22

evidence, . . . more than surmise, possibility, or conjecture that [plaintiff] has been guilty of negligence,'" she has generated a jury issue. *McQuay*, 126 Md. App. at 568-69 (quoting *Rosenthal v. Mueller*, 124 Md. App. 170, 174 (1998)).

Here, as Ms. Woolridge notes, the accident occurred while she was in a crosswalk. A pedestrian crossing a street within a designated crosswalk in Maryland "has the right-of-way over on-coming traffic, and the driver of an approaching vehicle 'shall come to a stop' when approaching a pedestrian in a cross-walk." *Love v. Curry*, 104 Md. App. 584, 702 (quoting Md. Code (1992 Repl. Vol.) § 21-502(a)(2) of the Transportation Article ("TR")), *cert. denied*, 340 Md. 214 (1995). The pedestrian's right-of-way, however, is not absolute, and in some circumstances, a pedestrian may be found to be contributorily negligent. *Id.* at 702-03. (citing *Brown v. Rogers*, 19 Md. App. 562, 565 (1974)).

The Court of Appeals has discussed the duty on a pedestrian as follows:

> "A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger. The law does not say how often he must look, or precisely how far, or when or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again. The law does not even say that, because he sees a wagon approaching, he must stop [until] it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward, will be a question for the jury."

*Merrifield v. C. Hoffberger Co.*, 147 Md. 134, 142 (1925) (quoting *Knapp v. Barrett*, 216 N.Y. 226, 230 (1915)).

The evidence here was that Ms. Woolridge, who had an unobstructed view on a sunny day, stepped off the curb into the intersection without observing any vehicles approaching. She did not know how many steps she had taken off the curb or how far she

23

had traveled in the crosswalk prior to being struck. She did not recall seeing Lauren's vehicle at any point prior to being struck. This is so, despite testimony from Officer Knott that Lauren's vehicle was 98% of the way through the turn, at almost a 90 degree angle, when Ms. Woolridge was struck by the right front of the vehicle. Under these circumstances, a reasonable inference is that Ms. Woolridge failed to see Lauren's vehicle turning into the intersection directly in front of Ms. Woolridge. Accordingly, the issue of contributory negligence was an issue of fact for the jury to resolve. *See Love*, 104 Md. App. at 703 (although a pedestrian in a cross-walk has the right of way over vehicular traffic, the question whether the pedestrian was contributorily negligent by failing to accurately judge the vehicle's speed and distance, is one for the trier of fact). The circuit court did not err in submitting the issue to the jury.

### III.

### Special Jury Instruction

Ms. Woolridge next contends that the circuit court erred in refusing to give her "requested instruction on pedestrian vigilance in a crosswalk." The instruction requested was as follows: "Where a pedestrian has the right of way in a crossing at an intersection, he/she may assume that the operator of a motor vehicle will obey the law and respect his/her right to complete the passage across the intersection."

Lauren contends that the court properly denied this requested instruction. She asserts that there was insufficient evidence to support the instruction "and the other jury instructions adequately provided the appropriate standards of care to be considered by the jury."

24

In declining to give Ms. Woolridge's requested instruction, the court stated that the issue was covered by Maryland Civil Pattern Jury Instructions ("MPJI-Cv") 23:2, which provides:

> The law imposes upon the operators of vehicles and pedestrians using a public street or highway the same duty each to exercise ordinary care. These duties are reciprocal. The vehicle operators must . . . exercise ordinary care so as to avoid injuring others and the pedestrians must exercise ordinary care so as to protect the pedestrian's safety. When persons are using or about to use a public street or highway either as an operator of a vehicle or as a pedestrian, they have a duty to keep a proper lookout and make reasonable observations as to the traffic and other conditions which confront them in order to protect themselves and others while using the streets and highways. What observations they should make and what they should do for their own safety and the safety of others are matters which the law does not attempt to regulate in detail, except that it does place on these people the continuing duty to exercise ordinary care and avoid an accident.[13]

The court stated that it did not want to give an instruction indicating that, once a pedestrian gets in an intersection, "they can basically close their eyes to the world." It stated that the proposed instruction suggested that "once you're in that intersection, you're home free," which was "contrary to the law."

---

[13] The current Maryland Civil Pattern Jury Instruction[] ("MPJI-Cv") 23:2 (5th ed. 2017), has been modified slightly, as follows:

> The law imposes upon the operators of vehicles and pedestrians using a public street or highway the duty to exercise ordinary care. These duties are mutual, reciprocal, and equal. Vehicle operators must exercise ordinary care so as to avoid injuring others and pedestrians must exercise ordinary care to ensure their own safety. When persons are using, or about to use a public street or highway either as vehicle operators or pedestrians, they have a duty to keep a proper lookout in order to protect themselves and others. What constitutes a proper lookout is determined by the particular facts of the case.

When we review a trial court's grant or denial of a requested jury instruction, we apply "the highly deferential abuse of discretion standard." *White v. Kennedy Krieger Inst., Inc.*, 221 Md. App. 601, 623, *cert. denied*, 443 Md. 237 (2015). In determining whether there was an abuse of discretion, we consider the following factors: "'(1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered in the instructions actually given.'" *Keller v. Serio*, 437 Md. 277, 283 (2014) (quoting *Stabb v. State*, 423 Md. 454, 465 (2011)). *See also* Md. Rule 2-520(c) ("The court need not grant a requested instruction if the matter is fairly covered by another instruction.").

Here, the court instructed the jury that, to find contributory negligence, Lauren had "the burden of proving by a preponderance of the evidence that the plaintiff's negligence was a cause of the plaintiff's injury." The court then instructed the jury consistent with MPJI-Cv 23:2, as follows:

> Duty to pedestrians. The law imposes upon the operators of vehicles and pedestrians using a public street or highway the same duty each to exercise ordinary care. These duties are reciprocal. The vehicle operators must . . . exercise ordinary care so as to avoid injuring others and the pedestrians must exercise ordinary care so as to protect the pedestrian's safety. When persons are using or about to use a public street or highway either as an operator of a vehicle or as a pedestrian, they have a duty to keep a proper lookout and make reasonable observations as to the traffic and other conditions which confront them in order to protect themselves and others while using the streets and highways. What observations they should make and what they should do for their own safety and the safety of others are matters which the law does not attempt to regulate in detail, except that it does place on these people the continuing duty to exercise ordinary care and avoid an accident.

After reviewing the instructions as a whole, we conclude that the circuit court's decision declining to give Ms. Woolridge's requested instruction was not an abuse of discretion. The issue presented was whether Ms. Woolridge exercised reasonable care in proceeding in the crosswalk under the circumstances of this case. MPJI-Cv 23:2 was a proper explanation of the law in that regard.[14] Moreover, the court specifically advised the jury that the observations that a pedestrian "should make and what they should do for their own safety and the safety of others are matters which the law does not attempt to regulate in detail." The court properly instructed the jury, and it did not abuse its discretion in declining to give Ms. Woolridge's proposed instruction.

## IV.

### Negligent Entrustment

Ms. Woolridge's last contention is that the circuit court erred in granting Ms. Abrishami's motion for summary judgment on the negligent entrustment claim. She asserts that Lauren's youth and inexperience, as well as her driving history, which included a prior accident, supported the claim of negligent entrustment.

This Court has recently stated:

> Maryland Rule 2-501(f) governs motions for summary judgment and provides that a trial court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine

---

[14] Ms. Woolridge points to cases that state that a motorist must exercise greater vigilance than a pedestrian in a crosswalk. *See, e.g., Straughan v. Tsouvalos*, 246 Md. 242, 249 (1967). The rationale for that rule, however, is that the pedestrian "cannot usually harm the motorist" and must "look only after his own safety, whereas the motorist may kill or seriously injure the pedestrian and therefore should look out for the safety of the pedestrian as well as his own." *Heffner v. Admiral Taxi Service*, 196 Md. 465 (1950). A pedestrian still has a duty to exercise reasonable care when crossing the street.

27

dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "On review of an order granting summary judgment, our analysis 'begins with the determination [of] whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law.'" *D'Aoust v. Diamond*, 424 Md. 549, 574 (2012) (quoting *Appiah v. Hall*, 416 Md. 533, 546 (2010)). We review the record "'in the light most favorable to the non-moving party and [we] construe any reasonable inferences that may be drawn from the well-pled facts against the moving party.'" *Id.* (quoting *Muskin v. State Dep't of Assessments & Taxation*, 422 Md. 544, 554-55 (2011)).

If, after reviewing the record, we determine "there is no material fact in dispute," we then "determine whether the trial court correctly granted summary judgment as a matter of law." *Doe v. Md. State Bd. of Elections*, 428 Md. 596, 606 (2012). "Our determination of whether the trial court's grant of summary judgment is proper 'is a question of law, subject to a non-deferential review on appeal.'" *Id.* (quoting *Tyler v. City of College Park*, 415 Md. 475, 498 (2010)).

*Heit v. Stansbury*, 215 Md. App. 550, 555 (2013) (parallel citations omitted).

With that standard in mind, we review Ms. Woolridge's contention. This Court has explained the tort of negligent entrustment, a type of negligence, as follows:

One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Hendrix v. Burns*, 205 Md. App. 1, 42-43 (quoting *Broadwater v. Dorsey*, 344 Md. 548, 554 (1997) (quoting in turn Restatement (Second) of Torts § 390)), *cert. denied*, 427 Md. 19 (2012). The "principal feature[] of the tort lie[s] in the knowledge of the supplier concerning the dangerous propensities of the entrustee and in the foreseeability of harm." *Kahlenberg v. Goldstein*, 290 Md. 477, 488 (1981). *See also Curley v. Gen. Valet Serv., Inc.*, 270 Md. 248, 267 (1973) ("We recognize that the entrustor is only responsible for the

subsequent negligent acts of the entrustee if a reasonable man could have foreseen the negligent acts; and that when the foreseeability of harm stems from past conduct, it must be conduct so repetitive as to make its recurrence foreseeable.").

*Kahlenberg* is an example of evidence sufficient to support a negligent entrustment claim as a result of a motor vehicle accident. In that case, the driver, Lawrence, had received his driver's license at the age of 16, and in the period of a few months after receiving his license, he had accumulated ten moving violations, which resulted in his license being revoked. 290 Md. at 480-82. Lawrence's father subsequently endorsed applications by Lawrence for reinstatement of Lawrence's driving privileges. *Id.* at 482. After his license was reinstated, Lawrence received four additional citations, of which his father denied knowledge. *Id.* at 483. Less than two years after Lawrence's license was reinstated, the accident occurred. *Id.* at 479-82.

The Court of Appeals concluded that, in the lawsuit filed by the passenger injured in a single-car accident, "there was sufficient evidence from which the jury could find that" Lawrence's father "had the requisite knowledge of Lawrence's propensities" and "knew or had reason to know that Lawrence was likely to drive in a negligent and reckless manner." *Id.* at 491, 493. *See also Rounds v. Phillips*, 168 Md. 120, 122, 124 (1935) (parents permitted minor son to drive vehicle when they "knew, or should have known" of his "habits of intoxication and habitually reckless and negligent use of automobiles"); *Curley*, 270 Md. at 266 (evidence of "six moving violations of the motor vehicle laws occurring within a five-year period of the accident" permitted finding "that [employee's] failure to heed traffic control devices was habitual and as a consequence rendered him an

29

incompetent driver whose use of the van entrusted to him by General Valet posed an unreasonable risk of physical harm to others"); *Snowhite v. Tennant*, 243 Md. 291, 298-99, 314-15 (1966) (employer was liable for negligent entrustment because there was sufficient evidence that the employer knew that the entrusted driver of a gasoline truck "was an habitually incompetent operator of a motor vehicle," given four convictions for moving violations in a two and one-half year period, a prior accident, and that the employee was drinking heavily and spent time at a bar immediately prior to driving the employer's trucks).

The facts in this case are not comparable. Although Lauren was a young driver, she had passed her driver's licensing examination and obtained her driver's license through the procedures required by the State of Maryland. And during the time that she had her license, she had only one prior incident, a minor incident resulting in a scratch on her vehicle, when Lauren was distracted by her dog in the car.[15] This evidence was not sufficient to show that Ms. Abrishami knew or had reason to know that Lauren had "dangerous propensities" or that any harm to others was reasonably foreseeable. Under these circumstances, the circuit court properly granted Ms. Abrishami's motion for summary judgment on the claim of negligent entrustment.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[15] Ms. Abrishami subsequently instructed Lauren not to drive with her dogs in the car, and Lauren did not do so.

30